Chester F. WOJCIECHOWICZ, Appellant,

v.

DEPARTMENT OF the ARMY, Appellee.

No. 84–3389.

United States Court of Appeals, Third Circuit.

Argued March 12, 1984.

Decided May 24, 1985.

Rehearing Denied Aug. 20, 1985.

John W. Murtagh, Jr. (Argued), Joel S. Sansone, Greenfield and Murtagh, Pittsburgh, Pa., for appellant.

J. Alan Johnson, U.S. Atty., Paul J. Brysh (Argued), Asst. U.S. Atty., Kathleen F. O'Hara, Legal Intern, Pittsburgh, Pa., for appellee.

Before HUNTER and GARTH, Circuit Judges and VAN DUSEN, Senior Circuit Judge.

## OPINION OF THE COURT

GARTH, Circuit Judge.

Chester F. Wojciechowicz appeals from an order of the district court entered on April 23, 1984, which granted the Department of the Army's motion for summary judgment and which denied Wojciechowicz's cross-motion for summary judgment.

We have jurisdiction pursuant to 28 U.S.C. § 1291.

### I.

#### A.

Chester F. Wojciechowicz was hired in 1969 as a civilian employee of the United States Army Package Store at Oakdale, Pennsylvania. The Package Store sells packaged liquor beverages. At the time Wojciechowicz was discharged, he held the position of Package Store Manager. During the thirteen year period of Wojciechowicz's employment, he received an outstanding performance rating as well as letters of commendation from two different supervisors for his service as the Package Store Manager. Otherwise, satisfactory performance ratings were given. (App. at 179–184).

#### B.

Wojciechowicz's troubles began in late 1981 when the Army received information from the Bureau of Alcohol, Tobacco, and Firearms (ATF) that Wojciechowicz may have been taking bribes from a salesman for Brown Foreman Distillers Corporation (BFDC).[1] After an investigation was conducted, Maj. Smith[2] recommended on February 1, 1982, that Wojciechowicz be removed from his employment. That recommendation was rejected on February 12, 1982 due to insufficient evidence.

During the ATF "bribery" investigation, Smith had a telephone conversation with Jogarrica Jones, a former employee[3] of the Oakdale Package Store, in which she stated that she had observed people not connected with the military who shopped at the Pack-

---

1. Wojciechowicz was questioned by agents of ATF concerning allegations that he may have been accepting gifts and money in exchange for purchasing BFDC products. The matter was referred to the Army under the Vendor Misconduct, Fraud and Mismanagement Information Exchange Program.

2. Smith is presently an executive consultant with Hoskins and Hoskins, Inc. According to an affidavit submitted to the district court on February 6, 1984, Smith was assigned to the

United States Army Support Element, Oakdale, Pennsylvania as the Installation Coordinator from April 1980 to November 1982. Wojciechowicz was under Smith's command. Smith assumed supervisory responsibility over Wojciechowicz on December 7, 1981 upon departure of the Assistant, Installation Club Manager, McLachlan.

3. Ms. Jones was employed at the Package Store from September 1979 to March 1980.

age Store. Smith thereupon took sworn statements [4] of four Package Store employees: Heidi Therese Krizan, Margaret T. Wilkins, Patricia K. West, and Arleen Snarey. All four employees stated that Wojciechowicz had held a meeting on or about February 19, 1982 in which he advised the employees to check all identification cards [5] and that no unauthorized patrons would be allowed in the store.

As earlier noted, Smith's recommendation that Wojciechowicz be discharged for bribery was not accepted. However, a second investigation regarding allegations that Wojciechowicz had violated AR 210–65 [6] by not restricting liquor sales to authorized persons ultimately led to Wojciechowicz's dismissal.

## II.

In late December or early January 1982, CW2 Gorman Lewis, Wojciechowicz's second line supervisor, questioned Wojciechowicz as to why an unauthorized store employee had been allowed to purchase liquor. Wojciechowicz responded that store employees, even though unauthorized, had to his knowledge always been allowed to make limited purchases. Lewis then directed Wojciechowicz to terminate any such practice. On January 29, 1982, Wojciechowicz issued the following Disposition Form to each store employee:

AR210–65, Installations Alcoholic Beverages, establishes the operation [sic] of the Class VI [7] Store system. Paragraph [sic] 3–8 of this regulation states who is authorized to purchase in the Class VI Store. This paragraph does not authorize employees of the Class VI system to make purchases. Effective immediately, no employee of the Class VI system is authorized or will make purchases unless they qualify under one of the categories of Paragraph 3.8, AR 210–65.[8]

On April 15 and 16, 1982, Maj. Joseph E. O'Hanlon, Jr., Military Police, and Carl W. Mantz, Chief, Management Employee Relations, interviewed three Package Store employees,[9] three Oakdale Union Bank employees, Ray Bauman, an Oakdale Security Guard, and William Dixon, Acting Package Beverage Store Manager.[10] According to the O'Hanlon-Mantz report, all the individuals interviewed stated that purchases by unauthorized persons had been made with the knowledge and sanction of Wojciechowicz.

On May 4, 1982, Smith interviewed Wojciechowicz who admitted that he had allowed employees of the Oakdale Package Store to make purchases, but Wojciechowicz claimed that these purchases had always been sanctioned by former club officers. Wojciechowicz also acknowledged

---

**4.** Wojciechowicz asserts that the four affidavits taken on February 22, 1982 were not made part of the record and only surfaced in November of 1983 when the Army filed its brief in support of its motion for summary judgment. (Appellant's brief at 30).

**5.** Headquarters Department of the Army, Installations Alcoholic Beverages, Army Regulation No. 210–65, section II, paragraph 3–9(2) requires that sales personnel check the credentials of non-uniformed patrons to make certain that each individual is entitled to package store privileges. Paragraph 3–8 of the regulation describes those who are authorized to make purchases at a Package Store. It is a violation of the regulation to allow unauthorized persons to make purchases.

**6.** See *supra* n. 5.

**7.** Wojciechowicz erroneously classified the Package Store as a Class VI Store. This appeal,

however, does not implicate that error. Nonetheless, AR 210–65, paragraph 3–8, which describes those who are authorized to make purchases, applies to the Package Store.

**8.** None of the employees was qualified or authorized to purchase products at the Package Store.

**9.** Patricia K. West, who was the head cashier at the Package Store, was not interviewed. Smith advised the Grievance Examiner, who was later assigned to hear Wojciechowicz's case, that West was not interviewed because she had resigned from federal service. However, as noted in text, infra, Smith had in fact interviewed Ms. West at an earlier time in connection with the bribery investigation of Wojciechowicz.

**10.** On March 9, 1982, Wojciechowicz was assigned to serve as a special assistant to Smith. Dixon assumed the position of Acting Package Beverage Store Manager.

that he himself had purchased small amounts of alcoholic beverages at Christmas and Easter for Oakdale Union National Bank employees as an "... expression of thanks for the support that the bank employees provided to the Army and the Class VI Store [sic]." (App. at 90).

On May 13, 1982, Wojciechowicz received a Notice of Proposed Separation for Cause for "... [the] first offense of persistent, knowing, and deliberate failure to observe specific written provisions of an administrative regulation (namely, Army Regulation No. 210–65), thereby impermissibly and illegally disposing of highly regulated U.S. Government property into the hands of unauthorized buyers." (App. at 56). Smith, in proposing that Wojciechowicz be removed, predicated his recommendation on both: 1) the O'Hanlon-Mantz interviews conducted in mid-April 1982 in which, according to Smith, three store employees, and Dixon and Bauman admitted to making unauthorized purchases during the period 1974 through February 1982, and 2) his own interview with Wojciechowicz.

Wojciechowicz, having been advised that he could "request a review by launching a written grievance at Step 3 of the [Army] Grievance and Appeals System ..." (App. 70), filed for such a review and sought a hearing before the United States Army Civilian Appellate Review Agency (USA-CARA).[11] Without granting Wojciechowicz a hearing, the Grievance Examiner issued a report and recommendation which recommended that Wojciechowicz not be discharged but that he be suspended for not less than 30 days nor more than 60 days and that back pay be awarded.

On October 22, 1982, Colonel Reniker, Commander, rejected the Grievance Examiner's recommendation and ordered that Wojciechowicz be separated for cause largely because he believed the record disclosed that Wojciechowicz had continued to violate AR 210–65 both before, and immediately after, CW2 Lewis' admonition to

cease sales to unauthorized personnel. Reniker did not believe that the Examiner had given sufficient weight to the gravity of the charged offense and chose instead to credit employee Krizan's statement that Wojciechowicz was "... going to still let a few people through [i.e., sell to unauthorized persons] even though he knew he was taking a risk."

The Army adopted Col. Reniker's recommendation and entered a final decision on November 10, 1982 affirming Wojciechowicz's dismissal.

### III.

Wojciechowicz filed an action in the district court against the Army under the Privacy Act, 5 U.S.C. § 552(a), et seq. and the Administrative Procedure Act, 5 U.S.C. § 701, et seq. seeking money damages and/or reinstatement with back pay. Wojciechowicz claimed that he was wrongfully discharged from his position as a result of violations of both acts.

The district court granted the Army's motion for summary judgment under the Administrative Procedure Act. The district court also held that no violation of the Privacy Act occurred. For the reasons discussed below, we reverse.

### IV.

#### A.

In *Lockhart v. Hoenstine,* 411 F.2d 455, 458 (3d Cir.), *cert. denied,* 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969), this court, in reviewing a grant of summary judgment, considered: (1) whether there was a genuine issue of material fact barring summary judgment and (2) assuming no genuine issue of fact existed, whether the district court was correct in applying the law. These considerations are set forth in Rule 56(c) of the *Federal Rules of Civil Procedure,* which provides in pertinent part:

---

**11.** Wojciechowicz had exhausted the first two steps of the grievance procedures without ob-

taining relief.

judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Under our prevailing standard, either a genuine dispute of material fact or an error of law will preclude a grant of summary judgment. In this case, Wojciechowicz claims that his dismissal was tainted by the Army's failure to afford him a full hearing as required by the Army's own regulations, and thus that the district court erred in granting summary judgment in favor of the Army. We agree.

### B.

■■■ The scope of judicial review of the Army's decision to terminate Wojciechowicz extends to a determination whether statutory and regulatory procedures governing employee dismissals have been satisfied. *See, e.g., Charlton v. United States,* 412 F.2d 390 (3d Cir.1969). If the Army does not follow its own regulations, the administrative decision to terminate an employee is subject to reversal upon a showing that the lack of procedural regularity prejudiced the employee. Because we conclude that the Army violated its own regulations when it failed to grant Wojciechowicz's request for a hearing, and because this failure prejudiced Wojciechowicz, we reverse the district court's order granting summary judgment to the Army. Since the Army's violation of its own regulations is a sufficient ground to reverse the

grant of summary judgment, we do not find it necessary to reach Wojciechowicz's claim that the Army's failure to provide a hearing also deprived him of his property right to employment without due process of law. See *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

### C.

As we have observed, our analysis must commence with an examination of those provisions of the Army Regulation which deal with disciplinary separation for cause of regular employees such as Wojciechowicz. Separation of such employees is governed by the procedures found in Chapter 7, AR 230-2.[12] In relevant part, Chapter 7 provides that where a decision to separate an employee has been taken, the notice of such decision must, among other things, include information that the employee has the right to appeal the separation action.[13]

In order to understand the meaning of the term "appeal" in the context of "separation for cause" of Chapter 7, we must look not only to the other provisions of Regulation 230-2, but we must also distinguish between the term "appeal" and the term "grievance" as those terms are used in the regulation. An *appeal* is defined as a request for reconsideration of a decision which results in an action adverse to the employee. Chapter 8, paragraph 8-4(b). A *grievance,* on the other hand, is defined as a request by an employee or by a group of employees for personal relief from matters of concern or dissatisfaction that are subject to the control of the Army and which are not appropriate for consideration under

---

**12.** Wojciechowicz was classified as a nonappropriated fund employee. Headquarters Department of the Army, Nonappropriated Funds and Related Activities, Personnel Policies and Procedures, Army Regulation 230-2, establishes policies and procedures for the administration of a total personnel program for nonappropriated fund instrumentality employees of the Army. Although AR 230-2 was superseded by AR 215-3 in February, 1984, AR 230-2 nevertheless governed all proceedings with which Wojciechowicz was concerned inasmuch as all events occurred in 1982.

**13.** AR 230-2, Chapter 7, paragraph 7-4d(11)(d) and (e) provide:

(11) Each notice of decision will ...

(d) Inform the employee he/she has the right to *appeal* the action and that the appeal must be filed before the expiration of the 15-calendar-day period immediately following the effective date of the action.

(e) Furnish the exact name and address of the person or office to which the *appeal* should be addressed. (See chap. 8, Appeals)

the appeals procedures. *Id.* at paragraph 8–4(a). Accordingly, the regulation prescribes different procedures depending on whether the action involved is a *grievance* or an *appeal.*

Where the grievance procedure is followed, a hearing may be ordered only at the discretion of the Grievance Examiner. Chapter 8, Section II, paragraph 8–17(d). Paragraph 8–5(f) provides that where an employee requests a hearing in connection with a grievance procedure, a hearing will be granted only when the Examiner determines a hearing is necessary.

Where, on the other hand, the employee has the *right to appeal* and an appeal is taken, the employee who desires a hearing may request that one be afforded. Chapter 8, Section III, paragraph 8–21. Once a hearing is requested, the employee becomes entitled to such a hearing as of right. Such a hearing may only be denied "... when it is impracticable due to unusual location or other extraordinary circumstances. The employee will be informed in writing when a requested hearing is denied." Chapter 8, Section I, paragraph 8–5(f).

Having analyzed the relevant Army Regulation pertaining to appeals and grievances and the appropriate procedures prescribed for each, in particular, the right of an employee to a hearing, it is clear that from the very outset Wojciechowicz's rights had been compromised by the route which the review of his dismissal took, i.e. a course which followed *grievance,* rather than *appeal,* procedures.

In the first instance, it must be remembered that the action taken against Wojciechowicz was an action adverse to him, i.e. a separation from employment. Indeed, his discharge from employment is characterized as an "adverse action" in the report of the Examiner. (App. at 116). As an adverse action, any request for reconsideration of his discharge had to be effected by way of an appeal. It could not, by definition, follow the procedures governing grievances. Chapter 8, paragraph 8–4(a). Yet, the official advice given to Wojcie-

chowicz was an instruction to file a grievance if he desired review of his discharge. Not only was this instruction inconsistent with, and indeed contrary, to the relevant regulation, but by directing Wojciechowicz to pursue a grievance rather than an appeal, the advice had the effect of denying Wojciechowicz his right to a hearing.

On June 11, 1982, LtC. Wright, Deputy Commander, wrote to Wojciechowicz and informed him that Wojciechowicz's responses to the notice of his proposed separation were rejected and that Wojciechowicz would be separated from federal service on June 16, 1982. Wright concluded his letter by informing Wojciechowicz that he could invoke the Army's grievance system by requesting "... such a review by launching a written grievance at Step 3 of the [Army] Grievance and Appeals System with the Commander ... Col. Gene B. Reniker ..." (App. at 70). On June 16, 1982 Wojciechowicz followed that instruction by filing a third step grievance protesting his discharge. On June 21, 1982, Wojciechowicz then sought a formal hearing. He wrote to Col. Reniker as follows:

1. Reference my letter of 16 June 1982: Subject: Third Step Grievance; I desire a formal hearing on my grievance.

2. I request the following individuals as witnesses on my behalf:

Margaret T. Wilkins, Employee, Oakdale Package Beverage Store

Arleen A. Snarey, employee Oakdale, Package Beverage Store

Heidi T. Krizan, employee, Oakdale, Package Beverage Store

3. I would Also [sic] like to have Major David P Smith present for questioning during this hearing; but not as a witness on my behalf.

Despite this formal request for a hearing, the Examiner who conducted the grievance proceeding, ostensibly pursuant to grievance procedures, did not convene a hearing. As a consequence, Wojciechowicz was denied the right to examine the witnesses as he desired and to cross examine Smith. The record is barren of any writing or reason given for denying the hearing

which Wojciechowicz sought. It is evident to us that had Wojciechowicz been properly advised to file an *appeal* and had the appeal been processed in accordance with appeal procedures, a hearing could not have been denied.

It is significant that Wojciechowicz has consistently claimed that any sales to unauthorized personnel had been effected with the knowledge and tacit permission of all previous managers and that he, Wojciechowicz, continued the policy of permitting employees to purchase liquor in response to his previous supervisors' desires. (App. at 61). He also argues that once he was advised to cease this practice he did so.[14]

The record before us is ambiguous with respect to the policies of Wojciechowicz's previous supervisors and the dates on which Wojciechowicz claims to have suspended the practice of selling liquor to employees or other unauthorized personnel. Indeed, a fair reading of the record would indicate that no violations occurred after Wojciechowicz had been directed to cease all such sales and had distributed an instruction form to that effect to the Package Store employees.

However, that fact cannot be found by us, nor can we resolve that issue any more than we are permitted to resolve the other factual issues disputed by Wojciechowicz.

We refer to this aspect of the record only to emphasize that had proper appeal procedures been employed, and had a hearing designed to develop the evidence been held, the findings that would have been made, would have put these matters to rest.

We are thus not in a position to predict what the record would have disclosed had Wojciechowicz been allowed to examine and cross-examine witnesses as the regulation which entitled him to a hearing, would have permitted him to do. Had a hearing been granted, whatever ambiguities now appear in the record which has been assembled to support the Army's separation decision, could have been clarified. In addition, witnesses who Wojciechowicz desired to call could have testified. In particular, Maj. Smith who at one time had recommended that Wojciechowicz be discharged for bribery—a recommendation which had not been adopted—could have been cross-examined by Wojciechowicz or his counsel.[15]

Mention must also be made that the affidavits of four Package Store employees which were taken in February of 1982 were either withheld or not made available until some time after Wojciechowicz had filed his complaint in the district court on July 11, 1983. These affidavits had been prepared and assembled by Smith in connection with his investigation of bribery charges against

---

**14.** Among other claims, Wojciechowicz also contends that the sanction of discharge imposed upon him violated administrative regulations inasmuch as the charge of permitting unauthorized sales was only his first offense.

**15.** Wojciechowicz not only challenged the factual content of Smith's affidavit, but also attacked Smith's objectivity. In his brief, Wojciechowicz argues that:

In an Affidavit sworn on February 24, 1984, Major Smith claimed that none of the materials contained in the criminal investigation in any way influenced his decision to recommend appellant Wojciechowicz's removal (App., p. 40A). In an earlier *signed statement*, dated February 6, 1984, Major Smith vacillated about what effect the prior criminal records had on his decision:

I *probably* would have recommended Murph's removal for the unauthorized sale of alcoholic beverages *even if other allegations were not pending at the time.*

(App., p. 28A) (emphasis supplied). The factual question of whether or not the Major was influenced by this material is clearly not settled as a result of this statement. In his later *Affidavit, Major Smith urges that this statement needs "clarification"* (App., p. 40A). Major Smith offers his explanation for the meaning of his statement and describes his earlier signed admission as being "imprecise" (*id.*). (Appellant's brief at 17–18).

We observe that in Smith's February 6, 1984 affidavit, Smith had concluded that Wojciechowicz was taking bribes because "where there is smoke there was probably fire." Smith's affidavit also contains the following statement: "Until I learned of the ATF material my impression of Murph (Wojciechowicz) was that he was a solid citizen and a dependable government employee, however, after receiving the information, I then viewed him with suspicion." (App. at 267).

Wojciechowicz; an investigation that bore no fruit.

Despite the fact that it was Smith who also participated in a subsequent investigation of Wojciechowicz, the four affidavits were not part of the Examiner's record and thus, could not, and were not, utilized in the grievance proceedings. Certainly, Wojciechowicz was not advised of their existence at that time. Whether or not the affidavits would have ultimately aided Wojciechowicz is not as important as the fact that they could have provided information to Wojciechowicz for examination purposes if a hearing had been ordered and witnesses made available.

■ In sum then, Wojciechowicz who was entitled to an appeal with a hearing if requested, was improperly advised to seek grievance rather than appeal relief. His denial of a hearing without more, constituted unlawful agency action that cannot be sustained under the Administrative Procedure Act, 5 U.S.C. § 701 et seq. *See Charlton v. United States*, 412 F.2d 390, 395 (3d Cir.1969) ("... judicial review of a federal agency's action with respect to the dismissal or discipline of a civil service employee extends to the determination whether procedural requirements have been satisfied in the administrative proceedings ..."). *See also Secretary of Labor of United States v. Farino*, 490 F.2d 885, 892–893 (7th Cir.1973); 5 U.S.C. § 706(1) ("To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—(1) compel agency action unlawfully withheld or unreasonably delayed...."). Accordingly, the district court's grant of summary judgment in favor of the Army must be reversed.

### V.

Wojciechowicz also asserted before the district court a violation of the Privacy Act by the Army. He claimed that the Army had failed to include as part of the administrative record the various affidavits of employees which had been taken by Maj. Smith. We have referred to those affidavits in our earlier discussion when we observed that all of the affidavits of the employees might have been useful to Wojciechowicz had a hearing been convened. We have concluded that the violation by the Army of Regulation 230–2 now requires a reversal of the summary judgment granted by the district court. That being so, it is evident that whatever proceeding the district court may order, these affidavits will now be available. Therefore, because of our disposition, we find it unnecessary to reach the merits of Wojciechowicz's Privacy Act argument.

### VI.

The April 23, 1984 order of the district court granting summary judgment in favor of the Army will be reversed and the case will be remanded to the district court for further proceedings consistent with this opinion, including remand to the Army for a hearing consistent with the Army Regulation.