Stephen W. ADAMS, Plaintiff,

v.

UNITED STATES of America and The United States Department of the Army, Defendants.

No. 86 Civ. 753 (RLC).

United States District Court, S.D. New York.

Nov. 18, 1987.

Jacobowitz and Gubits, Walden, N.Y. (John H. Thomas, Jr. and Lawrence H. Weintraub, of counsel), for plaintiff.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City (Chad A. Vignola, Sp. Asst. U.S. Atty., of counsel), for defendants.

## OPINION

ROBERT L. CARTER, District Judge.

Stephen W. Adams served as the manager of the Hotel Thayer, a nonappropriated fund instrumentality ("NAFI")[1] of the

---

1. "Nonappropriated fund instrumentalities are not funded by Congressional appropriation.

United States Military Academy at West Point, New York, from March 21, 1980, until September 7, 1984. He seeks review in this court, pursuant to 5 U.S.C. §§ 701–706, of the final determination of the Department of the Army discharging him from that position.

Plaintiff's complaint, amended September 15, 1986, alleges that the factual findings upon which the agency sustained three charges of breach of regulation against him are not supported by substantial evidence, and that the penalty of separation is not justified. Plaintiff also makes a claim under the Freedom of Information Act ("FOIA"). 5 U.S.C. § 552. Upon the administrative record before the court, each party asserts entitlement to summary judgment.[2]

## I. ADMINISTRATIVE PROCEEDINGS

On February 14, 1984, the Army Office of the Inspector General ("IG") informed Colonel Ernest E. Cross, Chief of Staff/Deputy Post Commander at West Point, of allegations of regulatory abuse at the Hotel. Admin.Rec. Part I, Tab 4(K), exh. A.[3] Col. Cross thereupon directed the IG to conduct an inquiry into those allegations. *Id.* The IG's Report of Inquiry, completed on March 21, 1984, forms the

subject matter of plaintiff's FOIA claim. Army regulations provide that an IG Report of Inquiry may be consulted by "the appropriate decisionmaking authority ... in making decisions concerning matters affecting mission performance and the state of the economy, efficiency [and] discipline" of the Department of the Army, Army Regulation ("AR") 20–1, ¶ 1–28(a), but may not be used "as the basis for adverse action against individuals," except with special authorization. *Id.* at ¶ 1–30(b)(1).

Following the completion of the IG Report, Lieutenant Col. Roger A. Grugle, plaintiff's supervisor, prepared to recommend disciplinary action against plaintiff, namely, a period of suspension without pay.[4] HT at 117. Though NAFI personnel regulations entrust matters of discipline, in the first instance, to an employee's supervisor, AR 215–3, ¶ 7–4(d); *see also id.*, at ¶ 7–4(a), Col. Edward L. Aschliman withdrew the matter from Grugle.[5] HT at 67–8, 128, 199; *see Admin.* Rec. I, 9. Col. Aschliman himself then issued plaintiff a notice of proposed separation for cause, dated July 19, 1984. Admin.Rec. I, 8. Col. Aschliman based his proposed penalty on five charges, three of which are relevant here:[6]

---

NAFI employees are paid primarily from income generated by the activity itself." *Hostetter v. United States,* 739 F.2d 983, 986 n. 2 (4th Cir.1984).

2. Plaintiff's failure to submit a statement of material facts with his motion papers "constitutes grounds for denial of the motion." Civil Rule 3(g), Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. *See also George v. Hilaire Farm Nursing Home,* 622 F.Supp. 1349, 1353 (S.D.N.Y.1985) (Carter, J.). In the interests of economy, however, the court invokes its discretionary power to "enter summary judgment *sua sponte,* so long as the losing party was on notice that she had to come forward with all of her evidence." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). It should be noted that the government has not raised plaintiff's procedural lapse as a ground for denial of his motion.

3. Hereafter, references to the Administrative Record will consist of a Roman numeral followed by a tab number or designation, e.g.,

Admin.Rec. I, 4(K). The transcript of the administrative hearing is cited "HT".

4. Lt. Col. Grugle based his recommendation in large measure upon the fact that he had not had the opportunity to counsel plaintiff in regard to the alleged offenses. HT at 67; Admin.Rec. II, USACARA Report at 13. The testimony showed that widespread confusion surrounded the proper use of NAFI procurement forms; in fact, plaintiff's former supervisor testified that he "never thought there was anything wrong" with the conduct which gave rise to charge "b". HT at 309.

5. The chain of command in connection with the Hotel was as follows: Lt. Col. Grugle (successor to Lt. Col. Elliot Fishburne, who retired in May 1983), plaintiff's immediate superior; Col. Aschliman (successor to Col. Tuczinski, who left his post in June, 1983), Grugle's superior; Col. Ernest Gross, Aschliman's superior; and Lt. General Willard Scott, Jr., Cross's superior.

6. Charges "c" and "e" were dropped during the course of administrative review.

a. You personally disregarded over-the-counter procurement procedures prescribed by paragraph 3–7, Department of the Army Pamphlet 27–154, in that you exceeded the $500 limitation on such orders by issuing the following purchase orders on the dates and for the amounts indicated:

—Purchase Order # 830460, dated April 29, 1983, in the amount of $1700.

—Purchase Order # 830507, dated May 4, 1983, in the amount of $696.

—Purchase Order # 839020, dated September 13, 1983, in the amount of $2,022.50.

—Purchase Order # HT 320–070–1, dated March 3, 1983, in the amount of $4,805.50.

b. You permitted your Assistant Manager, Mr. Armand Nasution, to issue the following purchase orders, on the dates and for the amounts indicated, notwithstanding the fact that you knew or should have known that he was not a certified contracting officer properly appointed in accordance with paragraph 1–3, Department of the Army Pamphlet 27–154 to wit:

—Purchase Order # 836068, dated June 28, 1983, in the amount of $2,000.

—Purchase Order # 838063, dated August 16, 1983, in the amount of $1,200.

—Purchase Order # 8410–009, dated October 6, 1983, in the amount of $2,298.41.

—Purchase Order # 8410–013, dated October 7, 1983, in the amount of $2,298.41.

.     .     .     .     .

d. During the period April 10 through May 15, 1984, you improperly permitted the use of a Hotel Thayer vehicle for the personal and private use of your Assistant Manager, Mr. Armand Nasution, in violation of paragraph 10–21b(1), Army Regulation 215–1, paragraph 2–4, Army Regulation 600–50, and Hotel Thayer Standard Operating Procedure, Annex W.

Col. Aschliman's notice informed plaintiff of his opportunity to respond to the charges against him.

In response, plaintiff made an oral presentation and submitted a written reply to Col. Cross, the official responsible for ruling on Col. Aschliman's proposed penalty. By letter dated September 6, 1984, Col. Cross conveyed his finding that four of the five "reasons mentioned in [Col. Aschliman's] proposal ... are fully supported by the evidence and warrant that you be removed." Admin.Rec. I, 2 at 3.

Plaintiff appealed Col. Cross's determination to Lt. General Willard W. Scott, Jr., Superintendent of the West Point Military Academy. Lt. General Scott referred the matter to the U.S. Army Civilian Appellate Review Agency ("USACARA"), which held a hearing on January 9–10, 1985. The USACARA hearing examiner issued her Report of Findings and Recommendation on February 28, 1985. Admin.Rec. II (hereinafter "USACARA Report"). The USACARA Report found that charges "a" and "d" were supported by the weight of the evidence, while charges "b" and "e" were not. Reasoning that "the penalty of separation was originally derived from considering five offenses in concert, one of which was later dropped by [Col. Cross] without a reduction in the penalty," the hearing examiner recommended limiting the penalty to a fourteen-day suspension. USACARA Report at 16. The examiner also ruled, on the basis of a "cursory review" of the IG Report of Inquiry, that plaintiff's ignorance of its contents "has not affected his right to defend himself." Id. at 3.

Regulations require "commanders and heads of activities" to

Implement recommendations in USACARO reports of findings on grievances and appeals unless there is sufficient justification for a higher level review....

AR 10–57, ¶ 4(b)(4). Pursuant to AR 215–3, ¶ 8–21(f), however, Lt. General Scott, "object[ed] to the examiner's recommendation" and forwarded plaintiff's appeal "to the head of the next higher level in the chain of command," Lt. General Robert M. Elton. By regulation, Lt. General Elton's decision would constitute final agency action. Id.

Plaintiff submitted written "rebuttal" to Lt. General Scott's "objection." Admin. Rec. III, "Objections and Rebuttal".

By letter dated May 15, 1985, Lt. General Elton found that charges "a", "b" and "d" were sustained. Admin.Rec. III, "Final Decision" (hereinafter "Final Decision"). He reinstated the penalty of separation, explaining that

> The position of Hotel Manager required Mr. Adams to be familiar with the rules and regulations governing the hotel operation and be responsible for all actions taken within the hotel. The charges I sustained involve the failure on the part of Mr. Adams to properly comply with the regulations governing the operation of the hotel. These failures taken together form a basis for removing him from the position. For the Thayer Hotel to operate efficiently and within all government rules and regulations, the manager must carefully supervise his subordinates and tightly control the operation. In failing to do this, Mr. Adams has lost the trust and confidence of his superiors and his ability to perform as the Hotel Thayer manager. On this basis I sustain the decision to remove Mr. Adams from his position as Hotel Thayer manager.

*Id.* at 1.

By letter dated January 2, 1985, one week prior to the hearing, attorney for plaintiff requested release of the IG Report of Inquiry of March 21, 1984, pursuant to FOIA. The Office of the Inspector General in Washington, D.C., responded on January 14 with an initial denial, claiming exemption under 5 U.S.C. § 552(b)(5) & (7). Plaintiff appealed this initial denial to the Office of the General Counsel by letter dated February 22. The appeal was denied on April 19, and plaintiff seeks review here of that final agency action.[7] On September 24, 1987, the court requested the Assistant U.S. Attorney to produce the document for *in camera* inspection, pursuant to 5 U.S.C. § 552(a)(4)(B).

## II. THE CHARGES

The court's role in reviewing agency action is delimited by § 10(e) of the Administrative Procedure Act, 5 U.S.C. § 706, which provides in relevant part that

> The reviewing court shall ... hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ... [or] unsupported by substantial evidence....

*Id.* The words of the statute must be applied "in the light of understanding of the basic objectives of review." 5 Davis, Admin.L. Treatise § 29:3 (2d ed. 1984). "The balance to be struck is that between the goal of efficient and effective agency action, on the one hand, and the value of judicial review in ensuring the rationality and fairness of agency decisionmaking, on the other." *Natural Resources Defense Council, Inc. v. SEC,* 606 F.2d 1031, 1048 (D.C.Cir.1979).

Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'." *Consolo v. Federal Maritime Comm'n,* 383 U.S. 607, 619–20, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966) (quoting *Consolidated Edison Co. of New York v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). Substantial evidence review is highly deferential, requiring something "less than the weight of the evidence" to sustain an agency's findings. *Id.* 383 U.S. at 620, 86 S.Ct. at 1026. Here, plaintiff concedes that he "was technically in violation" of the regulations implicated in charge "a" (exceeding the over-the-counter purchase limit) and charge "d" (allowing his assistant manager to use the Hotel van). Plaintiff's brief at 40. Where not even the party's own testimony before the agency contradicts the agency's findings, those findings most certainly pass muster under substantial-evidence review.

---

7. A heavily redacted version of the report was released to plaintiff's attorney on April 29, 1986, in connection with this litigation.

The question as regards specification "b" (permitting the assistant manager to issue purchase orders) is more complex. Plaintiff contends that the hearing examiner properly dismissed this charge on the ground that "no evidence was presented which would establish that the Assistant Manager issued a purchase order (DA Form 4067–R) as defined in DA PAM 27–254.3–1a." USACARA Report at 15. Rather, Nasution used form 4066–R, the use of which is limited to over-the-counter purchases of less than $500. The agency points out, however, that all four procurement actions at issue "were for amounts in excess of $500," Defendant's brief at 26, which, by regulation, must be made using form 4067–R, defined as a "purchase order." The agency, moreover, reads DA Pam 27–154 as precluding *any* procurement action, whether over or under $500, by personnel not certified to enter into contracts. Defendant's brief at 24. The hearing examiner, by contrast, found "tacit authorization" for the purchases by plaintiff's superiors. USACARA Report at 16.

Section 5 of the Administrative Procedure Act provides in part that "persons entitled to notice of an agency hearing shall be timely informed of ... the matters of fact and law asserted." 5 U.S.C. § 554(b)(3). In a similar vein, Army regulations require a "notice of proposed Separation for Cause [to] ... state specifically and in detail the reasons supporting the proposed action ...". AR 215–3, ¶ 7–4(d)(6)(a). Both the statute and the regulation simply embody the command of the due process clause "that one cannot be found guilty of an offense ... of which he had no fair notice." *NLRB v. Tennsco Corp.*, 339 F.2d 396, 399 (6th Cir.1964); *see also Sterling Drug Inc. v. Weinberger*, 503 F.2d 675, 681–82 (2d Cir.1974). *Cf. NLRB v. Mackay Radio & Telegraph Co.*, 304 U.S. 333, 349–51, 58 S.Ct. 904, 912–13, 82 L.Ed. 1381 (1938) (no breach of due process where Board shifted its legal theory from one of wrongful discharge to one of refusal to re-employ). "The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing'." *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 14, 98 S.Ct. 1554, 1563, 56 L.Ed.2d 30 (1978).

While it may be that plaintiff permitted his assistant manager to exceed the $500 limitation on over-the-counter purchases, the wording of charge "b" did not fairly apprise him that he would be called upon to defend himself on that ground. It appears, then, that only one issue is fairly raised by charge "b" as written: whether Nasution was authorized to make some purchases, or whether all purchases, of whatever dollar amount, were forbidden him. Department of the Army Pamphlet ("DA Pam") 27–154, ¶ 3–7(a), captioned "Over the Counter Purchases," provides that

[o]nly personnel authorized by the NAFI custodian may use DA Form 4066–R and only under the following conditions:

(1) The required item is immediately available.

(2) The amount of the purchase will not exceed $500.

(3) One delivery and one purchase will be made.

(4) The supplies or services purchased do not require technical inspection.

(5) No other purchasing method is suitable.

The government argues that the word "personnel" in ¶ 3–7(a), taken in context, denotes only those employees certified as contracting agents pursuant to DA Pam 27–154, ¶ 1–3. Defendant's brief at 24. While the United States Attorney attributes this interpretation of DA Pam 27–154 to Lt. General Elton, *id.* at 26, he indicates no source for it, within the record or outside of it. Nonetheless, he asserts that that interpretation is entitled to the court's deference. *Id.* at 24.

The court does not agree. "Deference to agency interpretation is not in order if the rule's meaning is clear on its face." *Pfizer, Inc. v. Heckler*, 735 F.2d 1502, 1509 (D.C.Cir.1984), *citing Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). Insofar as a regulatory enact-

ment is ambiguous, moreover, the extent of the court's deference depends upon the "thoroughness, validity, and consistency of the agency's reasoning." *FEC v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 37, 102 S.Ct. 38, 44, 70 L.Ed.2d 23 (1981); *Pfizer, supra*, at 1510. The regulation here at issue is unambiguous: it provides that "personnel" may be authorized to purchase over the counter. Where DA Pam 27–154 means "certified contracting officer," it uses those words. *E.g. id.*, ¶ 3–1(b) ("A unilateral purchase order is one which is signed only by the ... contracting officer.")

Even were the regulation unclear, its context does not give it the meaning urged by the government. Paragraph 1–2(b) does not "provide[ ] that *only* a certified contracting officer 'has the authority to enter into and administer contracts....'" Defendant's brief at 24 (emphasis added). Rather, it provides that: "A contracting officer has" that authority. Finally, it must be repeated that this "agency interpretation," if such it is, was not put forward by the agency at all;[8] so much the less is it supported by "thorough[ ], valid[ ], and consisten[t] ... reasoning."

■ As the regulation enabled the NAFI custodian to authorize the assistant manager to make purchases on DA Form 4066–R, it remains only to ask whether the agency's conclusion that Nasution was not so authorized is supported by substantial evidence. The term "NAFI custodian" in this instance refers to Lt. Col. Fishburne, who preceded Lt. Col. Grugle in the post of Treasurer. HT at 107, 123. Fishburne testified at the hearing that Nasution, and other assistant managers of the Hotel, signed over-the-counter purchase forms "with [his] knowledge and permission." HT at 308. The only evidence to the contrary is Lt. Col. Grugle's testimony that

"Mr. Adams delegated the purchasing" to Nasution. HT at 38.

Grugle's testimony need not be read as contradicting Fishburne's. If Grugle meant to assert simply that plaintiff permitted Nasution to make over-the counter purchases, his testimony is perfectly compatible with then-custodian Fishburne's having initially authorized Nasution, pursuant to ¶ 3–7(a) of DA Pam 27–154. If this is the case, the record is completely devoid of evidence to the effect that Nasution was *not* authorized.[9]

On the other hand, if Grugle meant to testify that his predecessor had not authorized Nasution to purchase for the Hotel, the question arises whether testimony without a basis in personal knowledge may, by itself, constitute "substantial evidence" in support of a finding. The rule which requires an agency finding of fact to rest on at least a "residuum" of legally competent evidence has, to be sure, lost some of its former vitality. *See Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (hearsay may constitute substantial evidence where claimant for disability benefits failed to exercise his right to subpoena the declarant). It nonetheless remains the law that "material 'without a basis in evidence having rational probative force'," *Perales, supra*, 402 U.S. at 407, 91 S.Ct. at 1430 (quoting *Consolidated Edison Co. of New York v. NLRB*, 305 U.S. 197, 230, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)), of which testimony of a witness who lacked personal knowledge is a clear instance, *see* Fed.R.Evid. 602, may not alone amount to substantial evidence.

Under either reading of Grugle's testimony, the record discloses no evidence upon which a finding may be sustained that Nasution was not authorized to purchase for the Hotel. Charge "b" must, therefore, be set aside.

---

8. That the agency's interpretation of DA Pam 27–154, ¶ 3–7(a) is, in fact, consistent with its plain text is suggested by Lt. Col Grugle's statement that "the person making over-the-counter purchases may not require a [contracting] warrant, [but] he/she at least requires the approval of the custodian." Admin.Rec. I, 2(A) (Memorandum of Aug. 27, 1984).

9. Nor did Lt. Col. Grugle testify that, when he became Treasurer in May, 1983, he revoked any prior authorization. It should be noted that ¶ 3–7(a) does not require authorization to purchase to be made in writing. *Cf.* ¶ 7–5 ("Appointments of ordering officers must be in writing ..."); ¶ 1–3(a) ("All appointed contracting officers must be certified ... in writing....").

## III. THE PENALTY

While the determination of penalties is generally entrusted to agency discretion, *see Power v. United States,* 531 F.2d 505, 507, 209 Ct.Cl. 126 (1976), *cert. denied,* 444 U.S. 1044, 100 S.Ct. 731, 62 L.Ed.2d 730 (1980), the Army's NAFI personnel regulations go far to reign in that discretion.[10] AR 215-3, ch. 7. In such a situation, the agency's penalty decision is subject to review not only for abuse of discretion, 5 U.S.C. § 706(2)(A), including a review of "whether the [agency's] decision was based on a consideration of the relevant factors....," *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971), but also for conformity to the requisites of due process of law. Due process review dictates that "the administrative decision to terminate an employee is subject to reversal upon a showing [of a] lack of procedural regularity [which] prejudiced the employee." *Wojciechowicz v. Dep't of Army,* 763 F.2d 149, 153 (3d Cir.1985) (prejudice where NAFI employee denied hearing before USACARA).

■ The present record discloses a number of acts and omissions by which Col Aschliman breached Army regulations in the issuance of his July 19, 1984 notice of proposed separation for cause. First, though regulations entrust an employee's immediate supervisor with the initiation of disciplinary action against him, AR 215-3, ¶ 7-4(d)(1); *see id.,* ¶ 7-4(a), Col. Aschliman withdrew plaintiff's case from Lt. Col. Grugle, plaintiff's first-line supervisor. HT at 66, 199. Aschliman took this step when he discovered that Grugle did not favor imposing the penalty of separation.[11] HT at 199. This action is especially troubling in light of Col. Aschliman's testimony that he was without first-hand knowledge of the events here at issue.[12] HT at 162.

Furthermore, by Col. Aschliman's own testimony, he did not consider Table 7-1, ("Penalties for Delinquency or Misconduct") of AR 215-3, in arriving at his recommendation. HT at 259. Regulations provide that "[i]n selecting penalties, table 7-1 ... will be used as *guide.*" AR 215-3, ¶ 7-3(e) (emphasis in original).[13]

Finally, Col. Aschliman did not consider the effect of plaintiff's discharge on "the morale of other employees," HT at 236, or plaintiff's personnel record, HT at 237, in settling on the penalty of separation. Paragraph 7-3(e) of AR 215-3 lists these as two of eight factors which "must be con-

---

10. A number of Army regulations provide guidance for the exercise of "[r]esponsible judgment ... in selecting among the variety of disciplinary penalties which may be imposed." AR 215-3, ¶ 7-3(e). In addition to eight factors which "must be considered," "table 7-1 ... will be used as a *guide.*" (emphasis in original). The penalty of separation, in particular, "will be taken only for such reasons as will promote the efficiency of the Service." AR 215-3, ¶ 7-4(d). Finally, ¶ 7-3(d) states that

Supervisors should, when appropriate, admonish and counsel with employees as the first step in constructive discipline to prevent breaches of regulations and ... to prevent repetition of offenses.

11. One of Grugle's reasons for recommending suspension rather than separation was that plaintiff had not been counselled in regard to his alleged shortcomings. HT at 67-68, 199, 262. *See* AR 215-3, ¶ 7-3(c) ("Supervisors should, when appropriate, admonish and counsel with employees as the first step in constructive discipline....")

12. The USACARA examiner, moreover, found that plaintiff "raised an inference that [Aschliman] may have considered other factors in selecting the penalty of removal in this instance." USACARA Report at 13. Those "other factors" related to a complaint which plaintiff had made against Aschliman to the latter's superior officer. Aschliman denied that the incident played a part in his decision, HT at 243, but proved himself less than impartial on several occasions. *E.g.,* HT at 217, 224.

13. When questioned as to the category of offense under which the charges against plaintiff fell under for purposes of Table 7-1, Col. Aschliman suggested that plaintiff's conduct amounted to a "[v]iolation of administrative regulations where funds [are] jeopardized." AR 215-3, Table 1-7, line 13(a). However, Aschliman was only able to testify that "the *potential* for jeopardy was there." HT at 261 (emphasis supplied). The record is devoid of testimony of *actual* jeopardy, *see* HT 294, 314, and the lesser category of offense, line 13(b) of Table 7-1, is unquestionably the appropriate one here.

sidered" by the supervisor in selecting a penalty.[14]

It also appears that Col. Aschliman proposed plaintiff's separation from employment in defiance of ¶ 7–4(d), which provides: "Separations for cause will be taken *only* for such reasons as will promote the efficiency of the Service." (emphasis supplied) Col. Aschliman himself conceded that, despite the regulatory infractions with which plaintiff was charged, "there was progress" in the operation of the Hotel under plaintiff's continued stewardship. HT at 237–38.

Upon final agency review, Lt. Gen. Robert M. Elton sustained plaintiff's discharge on the following basis:

> The position of Hotel Manager required Mr. Adams to be familiar with the rules and regulations governing the hotel operation and be responsible for all actions taken within the hotel.... For the Thayer Hotel to operate efficiently and within all government rules and regulations, the manager must carefully supervise his subordinates and tightly control the operation. In failing to do this, Mr. Adams has lost the trust and confidence of his superiors and his ability to perform as the Hotel Thayer manager.

Final Decision at 1, ¶ 3. The court, of course, sits in review of this final agency determination, and not of initial, tentative or recommended decisions. *See Moore v. Ross,* 687 F.2d 604, 608 (2d Cir.1982), *cert. denied,* 459 U.S. 1115, 103 S.Ct. 750, 74 L.Ed.2d 969 (1983) (citing 5 U.S.C. § 557(b)). Where final agency action rests, however, in some essential element, solely on a subordinate decision within the agency which is itself the fruit of unlawful or arbitrary procedures, the final determination must, of necessity, be set aside. *See Wojciechowicz, supra.*

The agency bears an affirmative burden to "demonstrate some 'rational basis' for its conclusion that a discharge 'will pro-mote the efficiency of the service.'" *Norton v. Macy,* 417 F.2d 1161, 1165 (D.C.Cir. 1969) (Bazelon, C.J.) (citations omitted) (interpreting former 5 U.S.C. § 7512(a) (1966), pertaining to preference-eligible employees); *Young v. Hampton,* 568 F.2d 1253 (7th Cir.1977) (interpreting former 5 U.S.C. § 7501(a) (1970), pertaining to Civil Service employees). Lt. General Elton's final determination necessarily, if implicitly, reached that conclusion. His decision relied upon a supposed nexus between plaintiff's misconduct and his having "lost the trust and confidence of his superiors," Final Decision at 1, ¶ 3, to the detriment of the "efficiency of the Service."

While NAFI regulations do not specify factors with regard to the "efficiency of the Service," loss of supervisory trust is clearly a relevant consideration. *See Young, supra,* 568 F.2d at 1259 (7th Cir. 1977). The agency's final decision here rests heavily on a finding of loss of trust. That finding, however, was made possible only by virtue of the recommending official's breach of regulation.

Lt. Col. Grugle, plaintiff's immediate superior and the only supervisor with first-hand knowledge of plaintiff's work, believed that plaintiff's potential for rehabilitation was strong. Under such circumstances, regulations directed him to "counsel" subordinate. Col. Aschliman, for reasons which the record does not disclose, took the extraordinary step[15] of removing the matter to himself from the person to whose judgment it was entrusted by regulation. Had Aschliman not done so, Elton could never have concluded that plaintiff had lost the trust of his superiors.

Indeed, had Aschliman left the matter of plaintiff's discipline in Grugle's hands, plaintiff could not have been subjected to the penalty of separation at all. The initial decisionmaker (in this case, Col. Cross) may take only such action as is proposed in the

---

**14.** AR 215–3, ¶ 7–3(e) states that:
The seriousness of the offense, the past record of the employee, the circumstances contributing to the offense, the probable effectiveness of the penalty in stimulating improvement, the reasonableness of the penalty, the need to impose like penalties for like offenses, the time period since a previous-like offense, and the influence of the penalty on the morale of other employees—all must be considered in reaching a decision on the action to be taken.

**15.** *See* HT at 320.

**1258**

notice, or less severe action. More severe action requires a new notice. AR 215–3, ¶ 7–4(d)(9). Thus, it is clear that Aschliman's breaches of Army regulation made their effects felt all the way up the line of administrative review. Such procedural defects are prejudicial, and the resulting agency action cannot stand.

The matter of plaintiff's penalty must consequently be remanded to Lt. General Elton for further proceedings. The agency's new determination must, at a minimum, address the factors and guidelines required to be considered pursuant to chapter 7 of AR 215–3.[16] Of course, the penalty must be reassessed in light of the court's ruling, Part II, *supra*, that charges "a" and "d," but not charge "b," are supported by substantial evidence.

## IV. PLAINTIFF'S FOIA CLAIM

Plaintiff's remaining claim actually encompasses two distinct arguments, each carrying its own remedy. Plaintiff first contends that the Department of the Army unlawfully denied his request under FOIA for the release of the March, 1984, IG Report of Inquiry; plaintiff's FOIA remedy is limited by statute to an order directing the agency to produce the document sought and, in the court's discretion, an award of costs and attorney's fees. 5 U.S.C. § 552(a)(4)(B) & (E). Plaintiff also contends that the Army's failure to produce the Report prior to plaintiff's administrative hearing denied him due process of law.[17] Should plaintiff prevail on this second claim, by showing his entitlement to the IG Report and establishing that his defense was prejudiced by the Army's fail-

ure to disclose it, *McClelland v. Andrus*, 606 F.2d 1278, 1286 (D.C.Cir.1979) (Wright C.J.); *cf. Wojciechowicz, supra*, 763 F.2d at 153, he must be afforded a new hearing. *J.H. Rutter Rex Mfg. Co., Inc. v. NLRB*, 473 F.2d 223, 241 (5th Cir.), *cert. denied*, 414 U.S. 822, 94 S.Ct. 120, 38 L.Ed.2d 55 (1973).

■ As regards plaintiff's statutory claim, the government relies on FOIA's fifth exemption, 5 U.S.C. § 552(b)(5), in justification of its excision of large portions from the IG Report of Inquiry it released to plaintiff on April 29, 1986.[18] Exemption (b)(5) pertains to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). It is well settled that exemption five "requires different treatment for materials reflecting deliberative or policy-making processes on the one hand, and purely factual, investigative matters on the other." *EPA v. Mink*, 410 U.S. 73, 89, 93 S.Ct. 827, 837, 35 L.Ed. 2d 119 (1973). In protecting the former but not the latter, Congress balanced the need for "open, frank discussion between subordinate and chief concerning administrative action," *id.* at 87, 93 S.Ct. at 836 (quoting *Kaiser Aluminum & Chemical Corp. v. United States*, 157 F.Supp. 939, 946, 141 Ct.Cl. 38 (1958)) against FOIA's overarching purpose of making all information available to the public "except as specifically" exempted. 5 U.S.C. § 552(d). Even where deliberative matter is interspersed with "purely factual material ... in a form that is severable", the latter must be disclosed. *Mink, supra*, 410 U.S. at 91, 93 S.Ct. at 838.

---

16. Once a "reasonably foreseeable, specific connection between an employee's conduct and the efficiency of the service" is made out, the agency must then "decide whether it outweighs the loss to the service of a particular competent employee." *Norton, supra*, 417 F.2d at 1167. In his final statement of findings and reasons, Lt. General Elton shows no sign of having grappled with this additional decision. This, despite uncontroverted testimony in the record concerning plaintiff's superlative contributions to the operations of the Hotel and to its financial well-being. *E.g.*, HT at 136, 139.

17. This argument, which plaintiff raised before the agency, *see* USACARA Report at 3, was not specifically pleaded in plaintiff's amended complaint. Nonetheless, the court considers it properly at issue, particularly since both parties address it in their briefs and the defendant has not objected to plaintiff's pleading.

18. The agency had originally asserted a (b)(7) exemption as well, but dropped it upon the conclusion of disciplinary proceedings. *See* Defendant's brief at 55.

Upon inspection *in camera*, the court concludes that the agency has unlawfully withheld much purely factual matter from plaintiff. The IG Report consists of five pages, to which are appended a thick binder of exhibits. From the Report itself, the agency has withheld two paragraphs under the heading "Evidence," and virtually the entirety of the text under the headings "Discussion," "Conclusions" and "Recommendations." Paragraph seven, under "Evidence," lists factual findings and should have been released, while paragraph eight, which recommends corrective action, was properly excised. Each of the twelve subsections of paragraph nine, headed "Discussion," is keyed to, and summarizes, a "Finding" attached to the Report as an exhibit. These summaries are purely factual, and should have been released.

Of the six subsections of paragraph ten, under the heading "Conclusions," only the last is not purely factual in nature. Under the same heading, paragraph eleven contains opinions, properly excluded. The final paragraph, under the heading of "Recommendations," was properly withheld in its entirety.

The withheld exhibits are labelled "Findings Nos. 001 through 010," "Finding No. 011" and "Finding No. 012." Each "Finding" consists of one or more cover pages to which are appended documentary evidence. Of the cover pages, the sections headed "Recommendation" were properly withheld. In Finding 007, the first nine sentences under the heading "Discussion" were properly withheld.[19] In Finding 010, only the first and seventh sentences of the first paragraph of "Discussion" should have been released; the remainder of that paragraph was properly withheld. With these exceptions, all other portions of the cover pages must be disclosed to plaintiff. None of the appended documentary evidence appears to be other than factual.

Although plaintiff has "substantially prevailed" on his FOIA claim, he is not entitled to recover attorney fees under 5 U.S.C. § 552(a)(4)(E). That section is intended to encourage the vindication of the public's substantive rights under FOIA and to discourage "recalcitrant ... opposition to a valid claim" on the part of the government, without "a reasonable basis in law." *Kaye v. Burns*, 411 F.Supp. 897, 903 (S.D. N.Y.1976) (Carter, J.) (quoting S.Rep. No. 854, 93rd Cong., 2d Sess. (1974), in Joint Committee Print at 171.). *See Vermont Low Income Advocacy Council, Inc. v. Usery*, 546 F.2d 509, 512–13 (2d Cir.1976) (Friendly, J.). In the instant case, "[t]he private self-interest motive of, and [potential] pecuniary benefit to" plaintiff were sufficient inducement to the bringing of the suit, and the benefits of disclosure here flow solely to plaintiff, not to the public. *Kaye, supra*, 411 F.Supp. at 903; S.Rep. No. 854, *supra*, in Joint Committee Print at 171. *See Vermont Council, supra*, 546 F.2d at 512–13.

Nor was the government's conduct "recalcitrant" or "obdurate." *Kaye, supra*, 411 F.Supp. at 903; Joint Committee Print at 171. In an application for attorney fees, the court need not reach the merits of defendant's claim that the IG Report and Exhibits were exempt under section 552(b)(7)(A)[20], *Kaye, supra*, 411 F.Supp. at 904, but must only decide whether defendant "had a reasonable basis in law" for asserting that exemption. In view of the decision in *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978) (showing of "interfere[nce] with enforcement proceedings" under exemption 7(A) does not require particularized case-by-case justification), it cannot be said that the Army's decision to withhold the Report during the pendency

---

19. The third paragraph of the "Discussion" portion of Finding 007 contains statements of the Hotel Comptroller which have already been made available to plaintiff. This paragraph is therefore releaseable.

20. 5 U.S.C. § 552(b)(7)(A) provides that mandatory disclosure "does not apply to matters that are ... records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings...."

of proceedings against Hotel managers lacked any "reasonable basis in law."

■ Plaintiff's due process claim in regard to the IG Report of Inquiry rests on at least three alternative theories: first, that he was entitled to have pre-hearing discovery of the Report on the theory of *McClelland v. Andrus*, 606 F.2d 1278, 1286 (D.C.Cir.1979) ("discovery must be granted if in the particular situation a refusal to do so would so prejudice a party as to deny him due process"); second, that the Report was "used as the basis for" the action taken against him, entitling him to "additional due process rights" under AR 20–1, ¶ 1–30(b); or third, that FOIA entitled him to the production of the Report.[21] Regardless of plaintiff's theory, however, he must show that the withholding of the Report from him in 1985 caused him prejudice. *McClelland, supra*, 606 F.2d at 1286; *see Wojciechowicz, supra*, 763 F.2d at 153. Because plaintiff has made no such showing, his motion for judgment on this claim must be denied at this time. The court does not, therefore, reach the question of whether any of plaintiff's three theories are made out.

Plaintiff is entitled, however, to review the releasable portion of the IG Report in order to determine whether it contains facts material to the defense he mounted at his hearing or whether it substantiates any new defense theory which he was prevented from asserting at his hearing for want of a factual basis. Defendant's motion for judgment on this claim will be deferred until plaintiff has had that opportunity. *See* F.R.Civ.P. 56(d).

## CONCLUSION

The final decision of the agency terminating plaintiff's Army employment is vacated and the matter of plaintiff's discipline is remanded to Lt. General Elton for further proceedings consistent with this opinion. In determining the severity of plaintiff's penalty, the agency is directed to take no account of charge "b" and to carefully consider all factors which its regulations require to be considered.[22] Should the penalty of separation again be invoked, the agency is directed to determine first whether a rational nexus exists between plaintiff's discharge and the "efficiency of the Service," and then whether, on balance, plaintiff's value to the service is outweighed by considerations of efficiency.[23]

The final decision of the agency denying plaintiff's FOIA request is set aside. The agency is directed forthwith to produce the IG Report of Inquiry and Exhibits to plaintiff, redacted in accordance with Part IV of this opinion. The redacted Report and Exhibits will become part of the record herein.

Within thirty days of his receiving the redacted Report and Exhibits, plaintiff may bring a motion to reconsider the dismissal of his due process claim based on the Report.

IT IS SO ORDERED.

---

**21.** Since, at the time plaintiff first made his request under FOIA, the agency raised a (b)(7) exemption, now withdrawn, plaintiff was not necessarily entitled to all the portions of the Report then to which he is now entitled.

**22.** *See* nn. 10, 14, *supra.*

**23.** Should the agency determine to reinstate plaintiff, he will be entitled to an award of backpay pursuant to AR 215–3, ¶ 8–5(b).