The **SAMUEL M. FEINBERG TESTA-MENTARY TRUST** and **Edith Citron, Plaintiffs,**

v.

Leigh **CARTER**, John C. Duncan, David L. Luke III, John D. Ong, David V. Ragone, Ian M. Ross, Patrick C. Ross, Thomas C. Simons, William P. Stiritz, G. Jack Tankersley, John L. Weinberg, Carl Icahn and Crane Associates, Defendants,

**and**

The **B.F. Goodrich Company, Nominal Defendant.**

86 Civ. 0698 (JMW).

United States District Court, S.D. New York.

July 13, 1987.

criminal record may exist under a different name.

Klari Neuwelt, of Wolf, Popper, Ross, Wolf & Jones, New York City, Barbara F. Wolf, of Sachnoff, Weaver & Rubinstein, Hartford, Conn., Joseph H. Weiss, New York City, for plaintiffs.

John M. Newman, of Jones, Day, Reavis & Pogue, Steven A. Coploff, of Gordon, Hurwitz, Butowsky, Weitzen, Shalov & Weing, Richard W. Reinthaler, of White & Case, New York City, for defendants.

## MEMORANDUM AND ORDER

WALKER, District Judge.

### INTRODUCTION

In this derivative action, Plaintiffs The Samuel M. Feinberg Testamentary Trust and Edith Citron allege that the individual defendants breached various legal duties when Defendant The B.F. Goodrich Company ("Goodrich") purchased more than 1,000,000 shares of Goodrich common stock held by Defendant Carl Icahn ("Icahn"). In a 45–page opinion dated January 15, 1987, this Court denied defendants' motion to dismiss the action for failure to make demand. *Samuel M. Feinberg Testamentary Trust v. Carter*, 652 F.Supp. 1066 (S.D.N.Y.1987). This Court also ruled on defendant motions to dismiss each of plaintiffs' claims. In one of these rulings, the Court granted defendants' motion to dismiss a claim alleging securities fraud, which plaintiffs had brought pursuant to section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5.

Plaintiffs move for reargument on this Court's decision to dismiss their federal securities fraud claims. For the reasons set forth below, plaintiffs' motion to reargue the dismissal of these claims is denied.

### STATEMENT OF FACTS

This Court's January 15 opinion in the instant case includes a relatively detailed statement of facts. In this memorandum, the Court will summarize only those facts relevant to the instant motion. Since plaintiffs seek a rehearing on a defendant motion to dismiss, all facts "are to be construed in favor of the plaintiff." *Budco, Inc. v. The Big Fights, Inc.*, 594 F.2d 900, 902 (2d Cir.1979) (per curiam).

Plaintiff's instant action challenges the November 5, 1984 repurchase of 1,171,700 shares from Icahn by Goodrich ("the Icahn repurchase"). Each of the individuals named as defendants, other than Icahn, was a member of the Goodrich board of directors at the time of this transaction.

The repurchase occurred after Icahn announced his plan to acquire as much as 30 percent of Goodrich common stock, possibly as a prelude to the purchase of a controlling interest in Goodrich. Alternatively, Icahn offered to sell his holdings of more than 1 million shares of stock to Goodrich at $35 per share. Icahn's $35 per share offer was about 25 percent above the market price for Goodrich common stock, which in October 1984 stood at $28 per share. Icahn thus would receive about $8 million more from a Goodrich acceptance of his offer to sell than from a sale of his shares on the open market.

On November 5, 1984, the Goodrich Directors accepted Icahn's $35 per share of-

fer. As part of the repurchase transaction, Icahn signed a "standstill agreement," which prohibited Icahn from acquiring any Goodrich stock for five years. Icahn also agreed that he would not disclose either the repurchase of his Goodrich shares or the standstill agreement, unless such a disclosure was required by law.

On November 9, 1984 Goodrich first announced the Icahn repurchase, stating that it had repurchased 1,171,000 shares of the company's common stock. Goodrich did not disclose that it had purchased the stock from a single shareholder at premium significantly above the market price. The first public disclosure of the premium paid by Goodrich for Icahn's shares occurred on March 6, 1985. Yet, many specific features of the repurchase were omitted from this disclosure and from Goodrich's Form 10-K for 1984, filed on March 20, 1985. Also, the Icahn repurchase was not mentioned in a March 1985 proxy statement, which included an amendment proposing changes in the company's stock repurchase policy.

On January 15, 1986, the SEC began an investigation of the Icahn repurchase, filing an order instituting proceedings against Goodrich. The SEC alleged that various Goodrich affirmations, including representations contained in the 1985 Proxy Statement, were materially misleading. The SEC investigation concluded with a settlement between the commission and Goodrich.

On April 18, 1986, plaintiffs brought the instant action, alleging that the Icahn repurchase violated federal and state securities laws.

### DISCUSSION

In the January 15, 1987 opinion on defendant's motion to dismiss the instant case, the Court held that plaintiffs had failed to plead a violation of section 10(b) of the Securities Exchange Act of 1934, and Rule 10b–5 promulgated thereunder. Plaintiffs bring the instant motion for reargument of the Court's dismissal of their federal securities fraud claim.

"The standard for granting a motion for reargument is strict in order to dissuade repetitive arguments on issues that have already been considered fully by the court." *Caleb & Co. v. E.I. DuPont de Nemours & Co.*, 624 F.Supp. 747, 748 (S.D. N.Y.1985); *accord Morgan Guaranty Trust Co. v. Garrett Corp.*, 625 F.Supp. 752, 756 (S.D.N.Y.1986). "The only proper ground for a motion for reargument is that the court has overlooked matters or controlling decisions which, had they been considered, might reasonably have altered the result reached by the court." *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 611 F.Supp. 281, 283 (S.D. N.Y.1985); *United States v. International Business Machines Corp.*, 79 F.R.D. 412, 414 (S.D.N.Y.1978). In the instant case, plaintiffs have failed to cite any material facts or controlling legal decisions that support reinstatement of their securities fraud claims.

■ A litigant bringing a federal securities fraud action typically must allege that a misrepresentation caused the litigant to effect a securities purchase or sale. *See, e.g., Wilson v. Commontech Telecommunications Corp.*, 648 F.2d 88, 92 (2d Cir. 1981); *Freschi v. Grand Coal Venture*, 551 F.Supp. 1220, 1228–29 (S.D.N.Y.1982). In the January 15 opinion, this Court held that plaintiffs had not alleged that misrepresentations by Icahn or any other defendant caused Goodrich to enter into the Icahn repurchase, and thus dismissed plaintiffs' securities fraud claim. This Court stated:

> Plaintiffs have produced no evidence of any false or deceptive conduct on the part of Icahn. In fact, plaintiffs' complaint makes no showing that Icahn did not deliver to Goodrich exactly what he promised in return for the $8 million stock premium: A binding representation that he would not attempt to take over Goodrich for five years after payment of the premium.

*Samuel M. Feinberg Testamentary Trust v. Carter*, 652 F.Supp. at 1080.

Plaintiffs do not challenge this Court's holding that the complaint does not plead the existence of a misrepresentation causing Goodrich to purchase Icahn's stock

shares. Instead, plaintiffs argue that the Goodrich directors' failure to require a shareholder's vote on the Icahn repurchase constitutes securities fraud, actionable under Section 10(b) and Rule 10b–5. Prior to this Court's January 15 decision, plaintiffs touched upon this argument in opposition to defendants' motion to dismiss. The Court finds the presentation of this argument in plaintiffs' instant papers no more persuasive than its earlier exposition.

■ Plaintiffs correctly state that where the majority of corporate directors are "adversely interested" to the shareholders in a corporate transaction, the failure of these directors to submit the transaction for a shareholder vote may constitute securities fraud. *Goldberg v. Meridor*, 567 F.2d 209, 215–18 & n. 6 (2d Cir.1977), *cert. denied*, 434 U.S. 1069, 98 S.Ct. 1249, 55 L.Ed.2d 771 (1978). *See also Maldonado v. Flynn*, 597 F.2d 789, 793–94 (2d Cir.1979). However, the Court cannot find that the Goodrich directors were so adversely interested that their failure to submit the Icahn repurchase for a shareholder vote could state a cause of action for securities fraud.

■ Plaintiffs argue that the Goodrich directors' adverse interest requiring a shareholder vote is established by the directors' desire to retain their corporate board membership and accompanying benefits, which runs counter to the shareholders' interest in not expending corporate funds unnecessarily. However, courts have repeatedly held that the interest in continued board membership is insufficient to require a shareholder vote on a contemplated corporate transaction that could effect board membership. *See, e.g., Brayton v. Ostrau*, 561 F.Supp. 156, 165 (S.D.N.Y. 1983); *Kaplan v. Bennett*, 465 F.Supp. 555, 563–65 (S.D.N.Y.1979); *Tyco Laboratories, Inc. v. Kimball*, 444 F.Supp. 292, 297–98 (E.D.Pa.1977); *Falkenberg v. Baldwin*, [1977–1978] Fed.Sec.L.Rep. (CCH) ¶ 96,086, at 91,911 (S.D.N.Y.1977).

Sound policies support the rule that the interest of a corporate board member in retaining his position does not require a shareholder vote on transactions that may effect board membership. To bring such nondisclosure cases within Rule 10b–5 would have the effect of "bootstrapping a significant portion of state fiduciary cases into federal court." *Brayton v. Ostrau*, 561 F.Supp. 156, 165 (S.D.N.Y.1983); *accord Tyco Laboratories v. Kimball*, 444 F.Supp. 292, 297–98 (E.D.Pa.1977). The Supreme Court has explicitly cautioned the lower courts against extensions of federal securities statutes that would "federalize the substantial portion of the law of corporations that deals with transactions in securities...." *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 479, 97 S.Ct. 1292, 1304, 51 L.Ed.2d 480 (1977).

Plaintiffs' argument for a broad rule requiring shareholder votes on transactions potentially affecting corporate board membership also ignores the practical realities of modern corporate management. Directors often will face strict deadlines on proposed mergers, sales, and other transactions: deadlines which leave far too little time for preparing proxy materials and assembling shareholders for a vote. *See Joy v. North*, 692 F.2d 880, 886 (2d Cir.1982), *cert. denied*, 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983); *State Teachers Retirement Board v. Fluor*, 500 F.Supp. 278, 293 (S.D.N.Y.1980), *aff'd in part, rev'd in part on other grounds*, 654 F.2d 843 (2d Cir.1981). This Court will not endorse a rule which would require directors to face a Hobson's choice of either abstaining from a transaction that requires an immediate business decision, or facing potential Section 10(b) liability for their participation in such a decision without formal shareholder approval.

Plaintiffs cite only a single case, *Goldberg v. Meridor*, 567 F.2d 209 (2d Cir. 1977), *cert. denied*, 434 U.S. 1069, 98 S.Ct. 1249, 55 L.Ed.2d 771 (1978), in support of their argument that the directors' nondisclosure of the Icahn repurchase states a cause of action under Section 10(b). However, in *Goldberg* the controlling shareholder of a corporation had caused that company to assume all of the debts owed by a second corporation, in which this controlling shareholder held a substantial interest. Since the corporate decisionmaker in

*Goldberg* allegedly possessed a "financial stake" in the proposed transaction, the Court of Appeals held that he should have submitted the challenged transaction to a shareholders' vote. *Id.* at 215–17 & n. 6. *See also Maldonado v. Flynn*, 597 F.2d 789, 793 (2d Cir.1979). In the instant case, plaintiffs have failed to show a similar "financial stake," and thus have not pleaded the adverse interest found to exist in *Goldberg.*

Plaintiffs' also argue that this Court's January decision, which held that the Goodrich director's "adverse interest" excused plaintiffs' failure to make demand, requires a holding that defendants' nondisclosure gives rise to a Section 10(b) action. However, in the January opinion, the Court held only that the interest of Goodrich directors in retaining their board positions would render futile any plaintiff demand that these directors take legal action challenging the Icahn repurchase, and that this interest justified an exception to the procedural hurdle imposed by the demand requirement. *Samuel M. Feinberg Testamentary Trust v. Carter,* 652 F.Supp. 1066, 1072–75 (S.D.N.Y.1987). The January opinion did not hold that the directors' interest in retaining their board seats was so dominant that their acceptance of the Icahn repurchase without a shareholder vote could constitute a violation of Section 10(b). Since such a decision by this Court would contradict both settled law and sound policy, the Court remains unwilling to find that plaintiffs have adequately pleaded a cause of action for federal securities fraud.

### CONCLUSION

Plaintiffs' motion for reargument is denied.

SO ORDERED.