**Stephen W. ADAMS, Plaintiff,**

v.

**UNITED STATES of America and The United States Department of the Army, Defendants.**

**No. 86 Civ. 753 (RLC).**

United States District Court,
S.D. New York.

April 18, 1988.

Jacobowitz and Gubits, Walden, N.Y. (John H. Thomas, Jr., Lawrence H. Weintraub, of counsel), for plaintiff.

Rudolph W. Giuliani, U.S. Atty. for S.D. N.Y., New York City (Chad A. Vignola, Sp. Asst. U.S. Atty., of counsel), for defendants.

## OPINION

ROBERT L. CARTER, District Judge.

The Government brings this motion, pursuant to Local Civil Rule 3(j), to reargue portions of the court's decision of November 18, 1987. The facts of the case are fully stated in the court's earlier opinion, familiarity with which is assumed. *See Adams v. United States,* 673 F.Supp. 1249 (S.D.N.Y.1987) (Carter, J.).

■ The only proper ground on which a party may move to reargue an unambiguous order is that the court has overlooked "matters or controlling decisions" which, had they been considered, might reasonably have altered the result reached by the court. *Bozsi Limited Partnership v. Lynott,* 676 F.Supp. 505, 509 (S.D.N.Y.1987) (Carter, J.); *New York Guardian Mortgage Corp. v. Cleland,* 473 F.Supp. 409, 421 (S.D.N.Y.1979) (Lasker, J.); *United States v. Int'l Business Machines Corp.,* 79 F.R.D. 412, 414 (S.D.N.Y.1978) (Edelstein, J.). The standard for granting motions to reargue is "strict in order to dissuade repetitive arguments on issues that have already been considered fully by the court." *Caleb & Co. v. E.I. DuPont de Nemours & Co.,* 624 F.Supp. 747, 748 (S.D. N.Y.1985) (Sweet, J.); *Samuel M. Feinberg Testamentary Trust v. Carter,* 664 F.Supp. 140, 142 (S.D.N.Y.1987) (Walker, J.).

The Government first seeks to reargue the court's holding that substantial evidence did not support charge "b" levelled against plaintiff. That charge alleged that plaintiff

> permitted [his] Assistant Manager ... to issue [enumerated] purchase orders ... notwithstanding the fact that [plaintiff] knew or should have known that [the Assistant Manager] was not a certified contracting officer properly appointed in accordance with paragraph 1–3, Department of the Army Pamphlet ["DA Pam"] 27–154....

The court began by noting that this wording did not fairly apprise plaintiff that he would be called upon to defend against the charge that he permitted his Assistant Manager to exceed the $500 limit on over-the-counter purchases. 673 F.Supp. at 1254. The only issue that remained was whether over-the-counter purchasing authority could be delegated to the Assistant Manager consistent with Army regulations. The court found that ¶ 3–7(a), DA Pam 27–154, permitted the "NAFI custodian" to delegate that authority to the Assistant Manager, and that substantial evidence did not contradict the custodian's testimony that he had so delegated it. 673 F.Supp. at 1255.

■ The Government proposes that the court reconsider this result on two grounds, neither of which was overlooked by the court when it first considered the matter. First, the Government argues that any procurement action for an amount over $500 constitutes a "purchase order," regardless of the procurement form used, and that only formally appointed "contracting officers" are competent to issue purchase orders. Reply Br. at 3–5. This argument suffers from the Government's utter failure, now as originally, to cite any Army regulation which defines "purchase order" otherwise than as a "purchase instrument issued on DA Form 4067–R...." ¶ 3–1(a), DA Pam 27–154. If this definition "exalts form over substance," Reply Br. at 3, it is because the promulgating agency saw fit to do so.

The Government's other argument controverts the court's ruling that ¶ 3–7(a), DA Pam 27–154, authorized the custodian to delegate purchasing power to the Assistant Manager. Nothing is adduced in support of the motion at bar, however, that might lead the court to reverse its determination that ¶ 3–7(a) is "unambiguous." 673 F.Supp. at 1255. Since " '[d]eference to

agency interpretation is not in order if the rule's meaning is clear on its face,' " *id.* at 1254 (quoting *Pfizer, Inc. v. Heckler,* 735 F.2d 1502, 1509 (D.C.Cir.1984)), the evidence of agency interpretation which the court is said to have overlooked lends no support to the Government's case.

■ Finally, the Government asks the court to reconsider its ruling that none of the factual conclusions generated by an Inspector General's investigation is protected by exemption five of the Freedom of Information Act ("FOIA"). 5 U.S.C. § 552(b)(5). The Government argues that some portions of the Inspector General's Report of Inquiry which were ordered released contain evaluation or analysis, making them deliberative in nature. While recommendations and opinions are protected in order to promote free and frank agency deliberation, *see E.P.A. v. Mink,* 410 U.S. 73, 87, 93 S.Ct. 827, 836, 35 L.Ed.2d 119 (1973); 1 Davis, Admin. Law Treatise, § 5:33, at 405 (1978), Congress has determined that "purely factual, investigative matters" are not immune from disclosure. *Mink,* 410 U.S. at 89, 93 S.Ct. at 836–37.

■ The Government contends that the court misconstrued the nature of portions of the Report, apparently in two senses. First, the Government seems to claim that facially factual statements of the Inspector General are immune from disclosure whenever they are the result of a synthetic act of judgment.[1] Thus, the Government seeks to shield propositions which categorize a state of affairs found, upon investigation, to exist, or which assert a factual conclusion. In an affidavit in support of its motion to reargue (submitted in disregard of Local Rule 3(j)),[2] the Government concedes, however, that a statement such as "[n]o penalty or interest fee was charged for past due accounts as required by [Standard Operating Procedures]," amounts to a "readily discernible fact requiring no deliberation." Decl. of Tkackuk, ¶ 3. Virtually the entirety of the matter for which the Government seeks protection is analytically indistinguishable from that statement. Statements of this kind are either true or not; the mere fact that an act of judgment occurs in the formulation of such a statement is not enough to lift it to the level of "deliberation."

■ The second claim that appears to emerge from the Government's briefs is that factual conclusions in the Inspector General's Reports play a deliberative role in agency decisionmaking. In ruling on a request under FOIA, the purpose the requested document plays in the administrative process must be kept in view. *N.L.R. B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 138, 95 S.Ct. 1504, 1510, 44 L.Ed.2d 29 (1975). As the court noted in its original opinion, Reports of Inquiry by the Army Inspector General are primarily predecisional in nature, and are "prepared solely for the use of the appropriate decisionmaking authority ... in making decision concerning matters affecting [*inter alia* ] the state of economy, efficiency [and] morale" in the Department of the Army. 673 F.Supp. at 1251 (quoting Army Reg. 20–1, ¶ 1–28(a) (1984)). Congress intended exemption five to protect free deliberation "with respect to legal and policy matters" on the theory that the "efficiency of Government would be greatly hampered if ... all Government agencies were prematurely forced to 'operate in a fishbowl.' " *Mink,* 410 U.S. at 87, 93 S.Ct. at 836 (quoting S.Rep. No. 813, 89th Cong., 1st Sess. 9 (1965)). That protection was "delimit[ed] ... as narrowly as consistent" with the rationale of governmental efficiency. *Id.*

■ The "legal and policy" deliberations of the Army's "decisionmaking authority," as the record in this case makes clear, concern not the Inspector General's factual conclusions, but rather the corrective ac-

---

1. The Government concedes, Reply Br. at 10, that the mere act of selecting facts for inclusion in a report does not make that report deliberative. *Playboy Enterprises, Inc. v. Dep't of Justice,* 677 F.2d 931 (D.C.Cir.1982).

2. That Rule provides, in relevant part, that "[n]o affidavits shall be filed by any party unless directed by the court."

**420**

tion necessary to remedy the irregularities which the Inspector General's investigation has found to exist. 673 F.Supp. at 1251. Thus, even if the "deliberations" of the Inspector General in determining whether given allegations are or are not substantiated were relevant to "legal and policy matters," [3] such deliberations are protected by exemption five only insofar as their disclosure might tend to expose the *decisionmaker's* deliberative process. *See, e.g., Montrose Chemical Corp. v. Train,* 491 F.2d 63, 68 (D.C.Cir.1974) (disclosure of summaries of record evidence prepared by EPA assistants to aid deciding official would permit litigants impermissibly to probe "[w]hether [the official] weighed the correct factors, [and] whether his judgmental scales were finely adjusted and delicately operated"). While the Inspector General's opinions and recommendations, therefore, do become a part of the deliberative process, his factual findings and conclusions (including conclusions that allegations are or are not borne out) do not.

In the course of re-examining the Report of Inquiry, however, the court discovered that it had inadvertently required disclosure of an opinion of the Inspector General, contained within paragraph 9(g) of the Report. That opinion may be excised. In all other respects, the motion is denied.

IT IS SO ORDERED.

---

[3]. That they are not is strongly suggested by the Army regulations governing Reports of the Inspector General. Those regulations provide that "[t]he investigating or inspecting officer has no authority to, and does not purport to, require that judgments, conclusion[s], and recommen-

dations contained in the report be accepted by the decisionmaking authority. The decisionmaking authority ... has the discretionary authority to go beyond the report and, in fact, can totally disregard it in reaching a decision." Army Reg. 20–1, ¶ 1–28(b) (1984).