**William FOXLEY, Plaintiff,**

v.

**SOTHEBY'S INC., Defendant.**

**No. 94 Civ. 7039 (SAS).**

United States District Court, S.D. New York.

April 24, 1995.

Order Denying Reargument
June 14, 1995.

Eric D. Grayson, Greenwich, CT, for plaintiff William Foxley.

Peter R. Stern, Jonathan A. Olsoff, Berger Stern & Webb, LLP, New York City, for defendant Sotheby's Inc.

## MEMORANDUM OPINION

SCHEINDLIN, District Judge.

William Foxley ("Foxley") has filed a Proposed Second Amended Complaint ("SAC") alleging seventeen causes of action against Sotheby's, Inc. ("Sotheby's"), a leading auction house for fine art. Foxley seeks damages in connection with his purchase at auction of a painting subsequently regarded as inauthentic. Defendant moves to dismiss all counts.

## I. FACTS

Foxley brought this action approximately seven years after his December 3, 1987 purchase at auction of a painting entitled "Lydia Reclining on a Divan." SAC at ¶ 10. The piece was represented to be the work of Mary Cassatt. SAC at ¶ 10. Based on this representation, plaintiff bid and paid $632,-500, which included a 10% auction house premium. SAC at ¶ 33.

Sotheby's auction catalog stated that the painting would be accompanied by a copy of a letter "discussing" the work from Adelyn Dohme Breeskin ("Breeskin letter"), who, at one time was considered an authority on Cassatt.[1] SAC at ¶ 11; Auction Catalog, December 3, 1987. The catalog guaranteed the authenticity of the painting for five years from the date of the sale. Auction Catalog, December 3, 1987. Foxley asserts that in 1992 he realized he did not have a copy of the Breeskin letter in his files. After notifying Sotheby's, Foxley received a letter stating that Sotheby's did not have the letter in its

---

1. The letter disclosed that Breeskin's evaluation was based on an examination of a color transparency of the painting; the catalog did not disclose this fact.

"immediate possession" at that time. SAC at ¶ 42. Foxley asserts that he did not receive a copy of the Breeskin letter until 1993, when he learned for the first time that Breeskin's comments were predicated upon her review of a color transparency of the painting rather than the original. SAC at ¶ 12, Ex. B. Plaintiff alleges he would not have bid on the painting if he had prior knowledge of this fact or the fact that, as Sotheby's allegedly knew, Breeskin had alerted the art world to massive Cassatt forgeries. SAC at ¶¶ 19, 23.

Nearly six years after his purchase, in August 1993, plaintiff consigned the painting to Sotheby's for auction to be held on December 2, 1993. SAC at ¶ 24. Prior to the auction, on November 30, 1993, Sotheby's advised Foxley that the Cassatt Committee determined the painting might be inauthentic and advised that he remove it from the auction. SAC at ¶¶ 25, 30. Foxley alleges this is when he first received actual notice of inauthenticity. SAC at ¶ 31. Foxley removed the painting from the auction block. However, he agreed to refrain from causing "damage" to the auction and Sotheby's by withdrawing the remainder of his consignment in consideration for defendant's alleged promise to refund Foxley's purchase price. SAC at ¶¶ 38–40. As a result of Sotheby's refusal to refund Foxley's purchase price, this action was commenced on September 28, 1994. SAC at ¶ 26.

## II. *DISCUSSION*

For purposes of a 12(b)(6) motion, courts must consider all material factual allegations in the complaint to be true and construe all reasonable inferences in a light most favorable to the plaintiff. *See Paulemon v. Tobin*, 30 F.3d 307 (2d Cir.1994). The complaint may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Id.* at 309.

### A. *Fraud*

Foxley's first cause of action alleges fraud. Sotheby's seeks dismissal based on the failure to state a claim and the statute of limitations.

### 1. *Failure to State a Claim*

Under New York law, the elements of common law fraud are: (1) false representation(s) of (2) material fact with (3) intent to defraud thereby [scienter] and (4) reasonable reliance on the representation (5) causing damage to plaintiff. *Turtur v. Rothschild Registry Intl., Inc.,* 26 F.3d 304, 310 (2d Cir.1994). Plaintiff alleges several bases for his fraud claim.

#### a. *Sotheby's Failure to Provide the Breeskin Letter*

First, despite defendant's statement that the Breeskin letter would accompany the painting, Foxley claims "upon information and belief" that Sotheby's did not have a copy of the Breeskin letter at the time of the auction. SAC at ¶ 11. The complaint fails to provide a factual basis for this allegation. As an allegation of fraud, therefore, it is not plead with sufficient specificity. The Second Circuit has spoken clearly on this issue.

> [A]llegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge. This exception to the general rule must not be mistaken for license to base claims of fraud on speculation and conclusory allegations. Where pleading is permitted on information and belief, a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard.

*Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d Cir.1990); *see also IUE AFL–CIO v. Herrmann,* 9 F.3d 1049, 1057 (2d Cir.1993). Further, even if Sotheby's did not have a copy of the letter at the time of the auction, fraud cannot be established on these facts. Rather, since fraud requires false representation(s) and intent, the claim could stand only if defendant knowingly misrepresented that the letter would accompany the painting. The critical allegation that is absent from the complaint is that Sotheby's falsely represented that it would deliver a copy of the Breeskin letter together with the painting.

### b. *Sotheby's Failure to Disclose that Breeskin Relied on a Photograph*

██ Second, Foxley alleges that if Sotheby's did have a copy of the letter, it "intentionally hid" the fact that Breeskin had relied on a photograph to authenticate the painting. SAC at ¶ 12. This allegation cannot serve as a basis for fraud. Sotheby's made only one representation with respect to the Breeskin Letter in its Auction Catalog: "A copy of a letter from Adelyn Dohme Breeskin discussing the painting will accompany the lot." Auction Catalog, December 3, 1987. The letter does just that; it discusses the painting. Despite plaintiff's assertions to the contrary, the Auction Catalog never represents that the Breeskin letter authenticates the painting. More importantly, Foxley never alleges how Sotheby's made a false misrepresentation and therefore has failed to state a claim based on this set of facts.

Further, this allegation fails to establish that Foxley justifiably relied upon Sotheby's representation that the painting would be accompanied by a letter. Foxley bought the painting in 1987 but allegedly did not receive the Breeskin letter until 1993. Transcript of Oral Argument, March 15, 1994, ("Tr.") at 29. There was more than enough time during this period to either attempt to obtain the letter or to realize that Sotheby's had failed to comply with its representation in the Auction Catalog.

Only two factual scenarios are possible; plaintiff either received the letter or he did not. Had Foxley obtained the letter, he would have discovered that Breeskin's discussion of the painting had been based on a transparency. Therefore, he could not have justifiably relied upon the letter as authentication for the painting. Alternatively if, as Foxley alleges, he did not acquire the letter for close to six years following his purchase, he could not justifiably rely on a letter he had not read.

██ Finally, the failure to receive the Breeskin letter does not establish fraud because it is an alleged omission of fact to which Foxley had access. "The principle that access bars claims of justifiable reliance is well settled ..." *Congress Fin. Corp. v. John Morrell & Co.,* 790 F.Supp. 459, 470–71 (S.D.N.Y.1992). The New York Court of Appeals established in *Danann Realty Corp. v. Harris,* 5 N.Y.2d 317, 320, 184 N.Y.S.2d 599, 157 N.E.2d 597 (1959) that where:

> facts represented are not matters peculiarly within the party's knowledge, and the other party has the means available to him of knowing, by the exercise of ordinary intelligence ... he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentation.

*See also Grumman Allied Indus., Inc. v. Rohr Indus., Inc.,* 748 F.2d 729, 737 (2d Cir.1984) ("where sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of the access, New York courts are particularly disinclined to entertain claims of justifiable reliance"); *Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, N.A.,* 731 F.2d 112, 123 (2d Cir.1984). While plaintiff does allege lack of sophistication and familiarity with respect to American Impressionism, Cassatt's specialty, Foxley was a sophisticated purchaser of art at auction. He certainly knew how to demand a letter described in an auction catalog, something he successfully accomplished in 1993. *See* Tr. at 29.

In *Aaron,* justifiable reliance was rejected because "all of the information [claimed to be concealed] was either public record, not pursued by plaintiffs or disclosed [by defendant], at least in part." *Id.* at 123. In Foxley's case, a reasonable response should have led him either to obtain the letter (and thereby inform himself that Breeskin relied upon a photograph) or to deduce that Sotheby's conduct was suspect and take appropriate action. Therefore, the fact that Breeskin relied on a color transparency was readily available, in the public domain, and plaintiff did not reasonably rely on or ascertain the existence and content of the letter. This allegation cannot serve as the basis for a fraud cause of action.

### c. *Sotheby's Failure to Disclose Breeskin's Unreliability*

Foxley's third set of factual allegations asserts that Sotheby's "failed to disclose that

in the late 1970's it was common knowledge in the French/American Impressionist art community to which Sotheby's belongs, that Breeskin's authentications had become suspect, 'unreliable' and 'doubtful.'" SAC at ¶ 13. For the reasons set forth above regarding inability to base fraud on an omission when the undisclosed information is in the public domain, this allegation fails as a basis for Foxley's fraud claim.[2]

### d. *False Provenance*

■ Foxley's fourth factual allegation is based on the provenance of the painting. Foxley claims Sotheby's falsely listed the "last owner of record or consignor [as] 'Private Collection, Paris' " when in fact the most recent owner, the consignor, was a Mr. Michael Altman. SAC at ¶ 20. Foxley alleges that it is widely known that Mr. Altman is not a trustworthy dealer, and that Sotheby's knowingly omitted his name to avoid placing a cloud over the painting. Plaintiff claims he relied on defendant's misrepresentation as he would not have purchased the painting if he had known of Altman's place in the provenance.

In its reply brief, Sotheby's sought to convert its Motion to Dismiss into a Motion for Partial Summary Judgment on the provenance issue. The Court granted the request to convert, and plaintiff received notice to this effect. Foxley argues that summary judgment should be denied because of "numerous factual issues" and failure to comply with Local Rule 3(g) and Chambers Rule 2(f).

Nonetheless, because defendant is clearly entitled to summary judgment on this issue, there has been no prejudice to Foxley. As is manifest from the affidavits and from oral argument, Foxley's allegation regarding the way Sotheby's lists ownership in its auction catalog is simply wrong. Foxley incorrectly assumed the line of ownership was listed in reverse chronological order.[3] By referring the Court to other provenance listings, Sotheby's irrefutably established that provenance is always listed in chronological order. *See* Olsoff Affidavit, Exs. B, C.

Moreover, Foxley knew that an auction house—and in particular, Sotheby's—frequently does not disclose the name of the consignor of a painting. In fact, Foxley, himself, had consigned paintings to Sotheby's and had his name withheld. Tr. at 6–9, 42–44; Stone Affidavit, Exs. B, C, D. Foxley's argument that one's name should be disclosed when a consignor also happens to be an art dealer is not persuasive as no authority exists for that novel proposition.

■ Alternatively, even if provenance were misrepresented, a fraud claim is precluded because the auction catalog stated that Sotheby's made no representations or warranties of provenance:

> The authenticity of the Authorship of property listed in the catalogue is guaranteed as stated in the Terms of Guarantee ... neither we nor the Consignor make any warranties or representations of the correctness of the catalogue or other description [including] ... provenance ... and no statement anywhere, whether written or oral, shall be deemed such a warranty or representation.

*Conditions of Sale* at ¶ 1.[4] Accordingly, Fox-

---

**2.** Both parties reference the affidavit of the apparent Cassatt and Breeskin expert, Walter Bazar. Bazar stated that Breeskin's unreliability "became the subject of increasing discourse in the artworld during the 1970's and became increasingly confirmed into the 1980's." Affidavit of William Foxley, Ex. S at ¶ 12.

Foxley also alleged Sotheby's knew or should have known of, but failed to disclose, Breeskin's warning of widespread Cassatt forgeries. SAC at ¶ 19. The same reasoning compels the conclusion that this allegation fails to state a claim for fraud.

**3.** The auction catalog listed provenance of the Cassatt piece as:

> Private Collection, Paris

> Dureau Collection
>
> Wildenstein & Co., Paris

Consistent with its custom and the rest of its catalog, Sotheby's listed succeeding owners after their predecessors.

**4.** Contrary to plaintiff's contention, New York's Arts & Cultural Affairs Law § 13.01(4) does not bar such disclaimers. Subsection (1) states that it incorporates certificates of authenticity "or any similar written instrument ..." Subsection (4) notes that a disclaimer serving as a negation or limitation of a warranty is inoperative if unreasonable and is unreasonable if, subject to § 2–202 of the Uniform Commercial Code:

> (ii) the work of fine art is proved to be a counterfeit and this was not clearly indicated in the description of the work; or

ley fails to state a claim for fraud.[5]

### 2. *Statute of Limitations*

A fraud claim is timely filed six years from its commission, two years from plaintiff's discovery or two years from when plaintiff could have discovered the fraud "with reasonable diligence."[6]  N.Y.Civ. Prac.L. & R. §§ 213(8), 203(g) (McKinney 1994).  Neither party disputes that six years from the commission of the alleged fraud had lapsed when plaintiff filed his first complaint. Whether or not the claim is timely, therefore, turns solely on when plaintiff discovered or should have discovered the alleged fraud. Further, "[t]he test as to when fraud should with reasonable diligence have been discovered is an objective one." *Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir.1983).  Once plaintiff has notice of the fraud, "[he] is charged with whatever knowledge an inquiry would have revealed." *Stone v. Williams*, 970 F.2d 1043 (2d Cir.1992).

The Second Circuit recently held that the time at which plaintiff was placed on inquiry notice could be appropriately determined as a matter of law:

> Where, as here, the facts needed for determination of when a reasonable investor of ordinary intelligence would have been aware of the existence of fraud can be gleaned from the complaint and papers such as the prospectuses and disclosure forms that are integral to the complaint, resolution of the issue on a motion to dismiss is appropriate.

*Dodds v. Cigna Securities, Inc.*, 12 F.3d 346, 352 n. 3 (2d Cir.1993) *cert. denied,* —— U.S. ——, 114 S.Ct. 1401, 128 L.Ed.2d 74 (1994).[7]

As in *Dodds, supra,* "the facts needed for determination of when a reasonable [buyer] of ordinary intelligence would have been aware of the existence of fraud can be gleaned from the complaint." *Id.* at 352.  Here, plaintiff failed to act upon his alleged failure to receive the Breeskin letter.  Regardless of what Sotheby's knew, plaintiff failed to obtain the letter from Sotheby's or to learn the widely known fact that Breeskin's reliability for authentication of Cassatts was in ques-

---

> (iii) the information provided is proved to be, as of the date of the sale . . . false, mistaken or erroneous.

Arts & Cultural Affairs Law § 13.01 (McKinney 1990).  Therefore, the disclaimer would be invalid as a bar to an action based on an instrument of authentication; it is a valid bar to an action based upon a representation of provenance.

**5.** Any claim for fraudulent concealment must also fail since all the elements of a fraud claim are incorporated into fraudulent concealment. *In re New York Trap Rock Corp.*, 42 F.3d 747 (2d Cir.1994); *Brass v. Am. Film Technologies, Inc.*, 987 F.2d 142, 152 (2d Cir.1993).

**6.** At the outset of this discussion, it is important to bear in mind the distinction between "reasonable diligence," an element of the statute of limitations defense, and "justifiable reliance," an element of the substantive fraud claim.

**7.** The Court is aware that earlier decisions in this Circuit (and State) recommend that statute of limitations questions be decided by the trier of fact.  *See e.g. Brass v. American Film Technologies*, 987 F.2d 142, 151–152 (2d Cir.1993) quoting *Gaines Serv. Leasing Corp. v. Carmel Plastic Corp.*, 105 Misc.2d 694, 432 N.Y.S.2d 760 (Civ. Ct.Kings Co.1980), *aff'd without opinion*, 113 Misc.2d 752, 453 N.Y.S.2d 391 (N.Y.App.Term. 1981) ("[i]t is no longer acceptable, if it ever was, to conclude in knowing silence, a transaction damaging to a party who is mistaken about its basic factual assumptions when . . . he would reasonably expect a disclosure"); *Ortiz v. Cornetta*, 867 F.2d 146 (2d Cir.1989) (statute of limitations defense should not be the basis for dismissal unless, beyond doubt, plaintiff can prove no set of facts to support his claim); *Schmidt v. McKay*, 555 F.2d 30, 37 (2d Cir.1977) (plaintiff-appellant's knowledge of relevant procedures and defendant-appellee's failure to respond to plaintiff's letters raised no more than suspicion; "although a plaintiff may not shut his eyes to facts which call for investigation, mere suspicion will not suffice as a ground for imputing knowledge of the fraud"); *Music Research v. Vanguard Recording Soc.*, 547 F.2d 192, 194 (2d Cir.1976) (whether or not plaintiff received notice—by the release of certain musical record—properly left to the jury as a question of fact); "undisputed knowledge of the pertinent facts . . . determines this issue as a matter of law . . . [but] in cases where the plaintiff's knowledge of the facts is unclear the question of discovery of the alleged fraud should be submitted to a jury"); *Watts v. Exxon Corp.*, 188 A.D.2d 74, 76–77, 594 N.Y.S.2d 443 (3d Dept.1993); *Trepuk v. Frank*, 44 N.Y.2d 723, 724–725, 405 N.Y.S.2d 452, 376 N.E.2d 924 (1978) ("reasonable diligence . . . is a mixed question of law and fact . . . [and if] it does not conclusively appear that a plaintiff had knowledge of facts from which the fraud could reasonably be inferred, a complaint should not be dismissed on motion and the question should be left to the trier of facts").

tion. Foxley's fraud claim is barred by the statute of limitations.

### B. *Negligent Misrepresentation*

For the reasons discussed below, plaintiff fails to state a claim of negligent misrepresentation, which, in any case, would be barred by the statute of limitations.[8]

#### 1. *Failure to State a Claim*

A claim of negligent misrepresentation requires a "special relationship." *American Protein Corp. v. AB Volvo*, 844 F.2d 56, 63–64 (2d Cir.), *cert. denied*, 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988) (more than ordinary buyer-seller relationship required for special relationship). Generally, a special relationship requires prior or ongoing interaction. *See Coolite Corp. v. American Cyanamid Co.*, 52 A.D.2d 486, 384 N.Y.S.2d 808 (1st Dep't.1976). An "arm's length business relationship is not enough." *United Safety of America, Inc. v. Consolidated Edison Co.*, —— A.D.2d ——, 623 N.Y.S.2d 591, 593 (1st Dep't.1995). Foxley meticulously laid out an array of allegations establishing a significant association between himself and defendant throughout two decades. Interactions between the two parties included personal visits, viewings of his personal collection, introductions to Sotheby's key personnel, private luncheons and various representations. *See* Complaint at ¶¶ 52–59. Allegedly, Foxley thought himself to be, and was treated as, a client with a factual and legal special relationship.

In *Rosen v. Spanierman*, 711 F.Supp. 749, 758 (S.D.N.Y.1989), *vacated in part and remanded on other grounds*, 894 F.2d 28 (2d Cir.1990), the mere purchase of a painting from defendant and subsequent appraisals with "no bearing on the relationship between the parties at the relevant time" did not create the special relationship necessary to maintain a negligent misrepresentation claim. As noted above, Foxley alleges considerably more than the plaintiffs had alleged in *Rosen*. However, this cause of action is clearly controlled by *Stewart v. Jackson & Nash*, 976 F.2d 86, 90 (2d Cir.1992). In *Stewart*, the Second Circuit affirmed the dismissal of one of plaintiff's claims.

### II. *The Negligent Misrepresentation Claim*.

\* \* \* \* \* \*

[U]nder New York law, a plaintiff may recover for negligent misrepresentation only where defendant owes her a *fiduciary duty* ... The complaint asserts no facts that would establish such a fiduciary duty (emphasis added).

The Court finds that there was no actual (or alleged) fiduciary relationship between the litigants. Therefore, Foxley fails to state a claim for negligent misrepresentation.[9]

#### 2. *The Uniform Commercial Code and the Statute of Limitations*

The purchase of the painting in this case constituted a sale of goods at auction governed by the Uniform Commercial Code, N.Y.U.C.C. §§ 2–328, 2–102, 2–105 (McKinney 1990).[10] *See also Miron v. Yonkers Raceway*, 400 F.2d 112 (2d Cir.1968) (action arising from auction sale of horse governed by U.C.C.); *Lupo v. Smith*, 80–5510, Slip Op. (S.D.N.Y. July 9, 1981) (Haight, J.) ("Article 2 of U.C.C.—which governs sales of goods— has been applied with full force to auction sales in several contexts ..."); *Regan Purchase & Sales Corp. v. Primavera*, 68 Misc.2d 858, 328 N.Y.S.2d 490, 492 (Civ.Ct. N.Y.Co.1972).[11] Sotheby's correctly notes

---

8. The disposition of the breach of contract claim, discussed *infra*, also turns on the analysis of this claim.

9. It is noteworthy that counsel for Foxley contended at oral argument that Foxley simply walked into Sotheby's and bid on the painting. Tr. at 36. This concession belies the existence of a special relationship at that time and, in any case, suggests that Foxley did not give Sotheby's the opportunity to perform any duties as required by a "special relationship."

10. According to Sotheby's, the full purchase price was for the sale of goods, not the provision of services. Foxley disagrees. However, both parties acknowledge that approximately 85% of the amount paid by Foxley covered the price of the painting. *See* SAC at ¶ 33; Def.Br. at 23; Tr. at 51–52.

11. Additionally, an auction house becomes the agent of a consignor of an item for auction. *Cristallina S.A. v. Christie, Manson & Woods*, 117 A.D.2d 284, 502 N.Y.S.2d 165 (1st Dep't 1986); 7

that a claim for negligence cannot be maintained where the underlying action sounds in contract. *See Wilson v. Hammer Holdings, Inc.*, 850 F.2d 3, 8–9 (1st Cir.1988).

Given that Foxley's contractual cause of action is controlled by the New York U.C.C., Section 2–725 thereof provides the relevant statute of limitations:

> An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued.... A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

As Sotheby's points out, the warranty of authenticity in the Terms of Guarantee did not extend to future performance:

> We guarantee the authenticity of Authorship of each lot contained in this catalogue on the terms and conditions set forth below.

> **2. Guarantee Coverage.** Subject to [ ] exclusions ... if within five (5) years from the date of the sale of any lot, the original purchaser of record tenders to us a purchased lot in the same condition as when sold through us, and it is established that the identification of Authorship (as defined above) of such lot set forth in the **Bold Type Heading** of this catalogue description of such lot ... is not substantially correct based on a fair reading of the catalogue including the terms of any Glossary contained herein, the sale of such lot

N.Y.Jur.2d, *Auctions and Auctioneers*, §§ 9, 28, 32.

**12.** *See also Shaheen*, 1994 U.S.Dist. LEXIS 2651 at *5 (S.D.N.Y. March 8, 1994) (equitable estoppel and its toll of the statute of limitations did not apply rendering breach of contract claim time-barred).

**13.** Additionally, even if Foxley could maintain a traditional negligent misrepresentation claim that is not governed by the U.C.C., it would be

will be rescinded and the original purchase price refunded.

Amended Complaint, Ex. A. The above is a limited warranty rather than a warranty of future performance; it expired on December 3, 1992.

Similarly, in *Rosen*, 894 F.2d at 31, defendants fully guaranteed the piece as an original. In rejecting plaintiffs' breach of contract action in that case, the Second Circuit declined to:

> create an exception to section 2–725's explicitness requirement when the warranty concerns an immutable quality.... As the district court recognized, subdivision 2 of section 2–725 is itself an exception to the general statute of limitations on breach of warranty claims. It would be inappropriate to expand this exception beyond its plain terms by dispensing with the condition that, to take advantage of the exception, the warranty explicitly extend to future performance.[12]

Accordingly, as to all causes of action arising from the U.C.C., the statute of limitations ran as of December 3, 1991—four years after the auction.[13]

### C. *Breach of Contract*

Foxley claimed the sale by defendant and the consignor of the inauthentic painting constituted a breach of contract for services by "authenticating, evaluating and auctioning" an inauthentic (or questionable) Cassatt when the price paid was for an authentic Cassatt. Foxley also alleges Sotheby's hid the breach. Because, as noted *supra*, this cause of action is governed by the four-year statute of limitations set forth in N.Y.U.C.C. 2–725, this claim is time-barred.

barred by the six-year statute of limitations. N.Y.C.P.L.R. § 213(1); *Shaheen v. Hahn*, 1994 U.S.Dist. LEXIS 2651, *4 (S.D.N.Y.); *Block v. First Blood Associates*, 743 F.Supp. 194, 200 (S.D.N.Y.1990); *Milin Pharmacy, Inc. v. Cash Register Systems, Inc.*, 173 A.D.2d 686, 570 N.Y.S.2d 341 (2d Dept.1991). Six years from the accrual of the cause of action expired in 1993. Further, the statute could not be tolled because fraudulent inducement was rejected, *supra*.

### D. *Recision*

■ Foxley seeks recision of the contract because it was allegedly entered into by unilateral or mutual mistake. Claims for recision are governed by a six-year statute of limitations contained in CPLR § 213(6). Unlike fraud, there is no tolling provision based on the discovery of mistake. Accordingly, the statute of limitations ran as of December 3, 1993—six years after the auction. Foxley's recision claim is time-barred.

### E. *Unjust Enrichment*

■ Foxley alleges that defendant was "unjustly enriched by taking $637,480 for something that has practically no value." SAC at ¶ 70. Unjust enrichment is a quasi-contractual claim. *See e.g. In re Chateaugay Corp.*, 10 F.3d 944 (2d Cir.1993). This cause of action fails to state a claim because quasi-contractual claims are not available where an express contract exists. *See Apfel v. Prudential–Bache Securities, Inc.*, 81 N.Y.2d 470, 479, 600 N.Y.S.2d 433, 616 N.E.2d 1095 (1993); *Clark–Fitzpatrick, Inc. v. Long Island Rail Road Co.*, 70 N.Y.2d 382, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987). The terms of the contract between Foxley and Sotheby's were composed, in part, of the Conditions of Sale and Terms of Guarantee.[14] The contract was finalized upon the closing of the bids on the Cassatt.

At oral argument, plaintiff countered this obstacle by arguing that fraud vitiates a contract. Tr. at 63. As determined above, plaintiff failed to state a claim for fraud. Accordingly, the contract between the parties remained in effect, and the claim for unjust enrichment must be dismissed.[15]

### F. *Promissory Estoppel Arising from the 1987 Sale*

■ The complaint alleges that Foxley detrimentally relied on representations by Sotheby's. Plaintiff further alleges that because Sotheby's hid its breach until November 1993, defendant "is estopped from denying that they represented the Cassatt as an original and that it breached its contract with Foxley by selling him an unauthentic painting for $632,500." SAC at ¶ 80.

Promissory estoppel is a quasi-contractual claim. *See e.g., Sheahan v. CBS, Inc.*, 1994 WL 74836, 1994 U.S.Dist. LEXIS 2623 (S.D.N.Y.). Because, as noted above, an express contract was in effect, this claim must be dismissed. *See Clark–Fitzpatrick*, 70 N.Y.2d at 389–390, 521 N.Y.S.2d 653, 516 N.E.2d 190; *Chrysler Capital Corp. v. Century Power Corp.*, 778 F.Supp. 1260 (S.D.N.Y.1991).

### G. *Breach of Separate/Modified Contract*

■ As noted above, after Foxley consigned the Cassatt to Sotheby's for the 1993 auction, he was notified of questions as to the painting's authenticity. Sotheby's advised him to withdraw the piece from the auction block. Foxley alleges that he, in turn, stated that he would withdraw all his works from the auction which would effectively ruin the event and harm the reputation and goodwill of Sotheby's. SAC at ¶ 85. Foxley alleges that Sotheby's, in consideration for his refraining from withdrawing his goods, promised to "make good on the painting [and hold him] harmless." SAC at ¶ 85. Foxley argues that Sotheby's thereby created a new or modified contract, which it subsequently breached.

Sotheby's first contends that the allegations cannot form the basis for a separate contract because the alleged conversation relates to issues explicitly raised in the Consignment Agreement. The Court disagrees. According to the complaint, an independent, express oral agreement with consideration was reached between the parties. SAC at ¶¶ 82, 83, 85.[16] It was capable of being performed within one year as required by the Statute of Frauds. N.Y.Gen.Oblig. § 5–701(a)(1) (McKinney 1989). Further, if the parties did enter into a new contract, plaintiff

---

**14.** The Statute of Frauds also suggests that the parties entered into a contract. *See* N.Y.Gen. Oblig. § 5–701(a)(6) (McKinney 1989).

**15.** Consistent with this determination, both parties conceded at oral argument that this claim

would stand or fall based upon the disposition of the fraud count. Tr. at 63, 68.

**16.** Moreover, once the painting was withdrawn, the consignment contract was voided.

has sufficiently alleged defendant's breach of that agreement.

Sotheby's also contends that ¶ 15 of the Consignment Agreement expressly prohibits oral modifications. Plaintiff responds that the modification became enforceable because it was partially performed by his leaving his other paintings with Sotheby's after being advised to withdraw the Cassatt. Defendant argues that the doctrine of partial performance is not available to a party unless the performance is "unequivocally referable" to the modification. The doctrine is available to plaintiff only if:

> [his] actions can be characterized as "unequivocally referable" to the agreement alleged. It is not sufficient ... that the oral agreement gives significance to plaintiff's actions. Rather, the actions alone must be "unintelligible or at least extraordinary," explainable only with reference to the oral agreement. Plaintiff's actions, viewed alone, are not "unequivocally referable" to an agreement to convey a one-half interest in defendant's corporation. While the agreement alleged provides a possible motivation for plaintiff's actions, the performance is equivocal, for it is as reasonably explained by the possibility of other expectations ...

*Anostario v. Vicinanzo*, 59 N.Y.2d 662, 663, 463 N.Y.S.2d 409, 410, 450 N.E.2d 215 (1983); *see also Towers Charter & Marine Corp. v. Cadillac Ins. Co.*, 894 F.2d 516, 522 (2d Cir. 1990). Sotheby's argues that Foxley partially performed not simply so that Sotheby's would fulfill its alleged agreement to "make good" on the Cassatt, but to avoid incurring withdrawal fees pursuant to paragraph 8 of the Consignment Agreement. Foxley denied this claim. Tr. at 70–71, SAC at ¶ 85. Construing the allegations of the complaint as true, as required, Foxley's claim of breach of an oral contract modification and/or a separate contract survives defendant's motion to dismiss.

### H. Remaining Claims Withdrawn or Dismissed at Oral Argument

At oral argument, plaintiff withdrew his claims for (i) "damage to business representation and emotional distress," (ii) promissory estoppel, (iii) deceptive trade practices, and (iv) professional malpractice. Also at oral argument, the Court dismissed five other claims. These claims warrant additional discussion.

### 1. Breach of Agency

■ The first such claim was for breach of agency agreement. Foxley alleged Sotheby's acted as his agent and breached its duty, when authenticating, appraising and offering the painting for auction. Plaintiff alleged defendant fraudulently recommended the sale of an inauthentic painting or failed to use its expertise to discover the inauthenticity. SAC at ¶ 99. At oral argument, Foxley's counsel stated that the claim revolved solely around plaintiff's 1987 purchase. Tr. at p. 72.

Foxley's claim is barred because the consignment agreement's express language states: "no representations or warranties [are made] with respect to [*inter alia*] authenticity." Consignment Agreement at ¶ 12. Further, the Auction Catalog states that, in order to protect a minimum bid, Sotheby's "bid[s] as agent for the seller ..." Auction Catalog (December 3, 1987).[17]

### 2. The Claims Relating to Sotheby's Appraisals

■ The four remaining claims were premised upon subsequent appraisals of the painting. Plaintiff alleged that Sotheby's was negligent in performing two appraisals in 1989 and 1993, and also breached its contract with Foxley. Defendant correctly argued that appraisals are for the purpose of estimating fair market value and, unlike authentications, do not purport to confirm provenance or authorship. Clearly demonstrating this fact, the appraisal agreements set forth a disclaimer: "our appraisal ... is

---

**17.** Additionally, there is authority stating that an auction house becomes the agent of a consignor of an item for auction. *Cristallina S.A. v. Christie, Manson & Woods*, 117 A.D.2d 284, 502 N.Y.S.2d 165 (1st Dep't 1986); 7 N.Y.Jur.2d, *Auctions and Auctioneers*, §§ 9, 28, 32. There is no authority for the proposition that an auction house acts as agent of the buyer.

not to be deemed a representation or warranty with respect to the authenticity of authorship ... genuineness ... [or] attribution." Appraisal Agreements at p. 1.

■ The appraisal agreements also include an exculpatory clause, which releases Sotheby's from liability stemming from appraisals. It states: "In consideration of our furnishing the appraisal, you hereby release Sotheby's ... from any liability or damages whatsoever arising out of or related to the appraisal .... unless ... due to Sotheby's gross negligence or bad faith." Generally, exculpatory clauses which are explicit in a contract foreclose damage claims alleging reliance on the subject matter disclaimed. *See e.g., Manufacturer's Hanover Trust Co. v. Yanakas,* 7 F.3d 310 (2d Cir.1993); *Travelers Ins. Co. v. 633 Third Associates,* 973 F.2d 82, 84–85 (2d Cir.1992); *Danann Realty Corp. v. Harris,* 5 N.Y.2d 317, 184 N.Y.S.2d 599, 157 N.E.2d 597 (1959). Foxley, however, alleges that the 1993 appraisal suggests bad faith. SAC at ¶ 127.

The Court has reconsidered its oral ruling. Sufficient facts exist to support the two claims that the 1989 and 1993 appraisals of the painting were negligently performed. Defendant twice re-appraised the Cassatt at $650,000 when, in fact, it might have been worthless. SAC at ¶¶ 125, 127.[18] Accordingly, the claims for negligent appraisal survive the motion to dismiss.

### I. *Attorneys' Fees*

Finally, pursuant to Fed.R.Civ.P. 15(a), Sotheby's seeks attorneys' fees based on the fact that this is a proposed third complaint and that some arguments have been frivolous. Because the Court finds that many of the questions raised by the complaint and the briefs were brought in good faith and, indeed, raised close questions, the request is denied.

### III. CONCLUSION

For the foregoing reasons, all causes of action are dismissed except the negligent appraisal claims and those relating to the 1993 oral contract. Attorneys' fees are denied.

SO ORDERED.

### *OPINION ON REARGUMENT*

Pursuant to Local Rule 3(j), Defendant Sotheby's, Inc. seeks reargument of the Court's denial of its Motion to Dismiss the twelfth and fifteenth causes of action in the proposed Second Amended Complaint ("SAC"). Those causes of action allege (gross) negligence and/or bad faith with respect to two agreements the parties entered into whereby Foxley paid Sotheby's to appraise his art collection ("appraisal agreements").

The standard for moving to reargue is not in dispute.

> The only proper ground on which a party may move to reargue an unambiguous order is that the court has overlooked [important facts or controlling law] which, had they been considered, might reasonably have altered the result reached by the court.

*Adams v. U.S.,* 686 F.Supp. 417, 418 (S.D.N.Y.1988) (citations omitted); *see also, Fulani v. Brady,* 149 F.R.D. 501 (S.D.N.Y. 1993) ("[l]ocal Rule 3(j) is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court"), *aff'd,* 35 F.3d 49 (2d Cir.1994).

This Court fully considered the law and facts of this case in its Memorandum Opinion issued on April 21, 1995 ("Mem.Op."). Familiarity with that opinion is assumed.

Sotheby's argues that this Court erred in finding that "Sotheby's had a duty to *authenticate* the [p]ainting notwithstanding the explicit provisions in the appraisal agreements stating that Sotheby's was not [performing an] authenticat[ion]." Defendant's Reply Brief at 2, (emphasis in original). Sotheby's contends, therefore, that it is immune from

---

18. Defendant allegedly committed, at a minimum, gross negligence by representing in its report of December 2, 1993 that the Cassatt was worth $650,000. SAC at ¶ 37. Sotheby's made this representation subsequent to its discovery that the Cassatt Committee had questioned the authenticity of the painting. SAC at ¶¶ 25, 30, 37; Ex. L at p. 16.

suit as a result of a disclaimer contained within each appraisal agreement.[1] This argument misconstrues the Memorandum Opinion. The Court does *not*, in its earlier opinion or in this one, require appraisals to include authentication of the article appraised. However, in the absence of an explicit disclaimer that the customer agreed that the appraisal fully *assumes authenticity and other indicia of genuineness*, liability may attach from an appraisal performed with gross negligence or bad faith. The assumption of authenticity for appraisal purposes can be rebutted by supportable allegations of gross negligence or bad faith, including fraudulent appraisal. This is particularly true where the appraiser, itself, was aware of significant doubt as to the authenticity of the work in question.[2]

Perhaps of paramount importance, Sotheby's argues that Foxley failed to allege that Sotheby's knew or should have known the painting was inauthentic. Sotheby's Reply Brief at p. 3. The Second Amended Complaint, in fact, makes precisely that allegation. SAC at ¶ 29. These claims are, therefore, supported by sufficient facts to withstand dismissal. Defendant's alleged knowledge of the painting's inauthenticity at the time of the appraisals, if proven at trial, necessarily gives rise to liability. Rendering an appraisal of the painting at $650,000 in the face of knowledge of inauthenticity would clearly constitute—not merely gross negligence but also—*mala fides*.

Finally, Sotheby's arguments, taken at face value, would insulate all appraisals from any claims of gross negligence or fraud based on inauthenticity. Sotheby's argues that appraisals accompanied by disclaimers can never be negligently performed if the claim is based on the fact that the artwork in question is inauthentic. Defendant's concern that this holding will burden appraisers with a duty to authenticate is unfounded. Appraisals of inauthentic artwork do not give rise to liability where they explicitly disclaim authentication and where a plaintiff cannot demonstrate that the appraiser had, or should have had, knowledge of inauthenticity.

Construing the complaint liberally, as required,[3] these two claims should not be dismissed. If, at the completion of discovery on this issue, plaintiff's allegations of gross negligence or bad faith are inadequate as a matter of law, the claims will then be dismissed.

Because Sotheby's has not demonstrated that the Court overlooked any controlling law or material facts, the Motion to Reargue is denied.

SO ORDERED.

---

1. Plaintiff's fall back argument relates to the exculpatory clause attached to the agreements. As explicitly noted in the Memorandum Opinion, Foxley sufficiently alleged that the 1993 appraisal suggests gross negligence or bad faith. SAC at ¶¶ 110, 127; Mem.Op. at 1236. Foxley's allegation, if deemed to be true, effectively disposes of Sotheby's exculpatory clause argument.

    Defendant's contention that the Court mistakenly combined the defenses arising from the two clauses of the appraisal agreements is based on a misconception. It is merely coincidental that the allegations happen to plead facts sufficient to both abrogate the exculpatory clause and render the disclaimer irrelevant. In other words, Foxley alleges (i) that Sotheby's relinquished its im-

munity from suit and (ii) that Sotheby's performed unacceptable appraisals.

2. The following hypothetical demonstrates the point. If an appraiser *knew* that an alleged family heirloom diamond ring was made of cubic zirconium, then a $100,000 appraisal is simply fraudulent. One cannot *presume* authenticity in the face of facts to the contrary. This is a very different concept than requiring an appraiser to *authenticate* an object during an appraisal.

3. *See Fludgate v. Management Techs.*, 885 F.Supp. 645, 646 (S.D.N.Y.1995) (citing *Easton v. Sundram*, 947 F.2d 1011, 1014 (2d Cir.1991) *cert. denied*, 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992)).